**In re the Marriage of Charlene S. DeBOER, Appellant– Petitioner,**

v.

**David L. DeBOER, Appellee–Respondent.**

No. 75A03–9512–CV–414.

Court of Appeals of Indiana.

July 15, 1996.

Transfer Denied Dec. 31, 1996.

Debra Lynch Dubovich, Levy & Dubovich, Highland, for Appellant.

Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, for Appellee.

## OPINION

HOFFMAN, Judge.

Appellant-petitioner Charlene S. DeBoer (Charlene) appeals from an order modifying the property settlement and child support agreement adopted by the trial court following the dissolution of her marriage to David L. DeBoer (David) in 1989 and as modified by agreement in 1991. The facts relevant to the appeal are summarized below.

Charlene and David were married in 1971 and divorced in 1989. The trial court incorporated into its dissolution decree the parties' "Property Settlement and Custody Agreement" (Agreement). Addressing spousal maintenance, the Agreement in "Provision G" provided, in pertinent part:

G. *ALIMONY.*

David shall pay alimony to Charlene in the amount of $2,000.00 per month for a period of 15 years. These payments will terminate upon the death of Charlene. It is the intention of the parties that by reason of such payments, David will be able to deduct the same for income tax purposes and they shall be taxable to Charlene. Charlene agrees to report such payments as income on her income tax returns.

Another section of the Agreement, "Provision F," addressed separately the issue of child support.

In 1991, prompted by David's petition to reduce his support amount, the parties executed a subsequent document entitled "Agreed Modification and Amendment To Property Settlement Agreement" (Modified Agreement). The Modified Agreement contained five provisions. The first provision lowered David's child support payments to $830.18 per month for the three minor children, the second clause provided that David would pay Charlene $395.17 to be deposited into a college fund for the future benefit of the children, and the third provision stated:

3. David reiterates his commitment to pay the alimony he is currently paying to Charlene in the amount of $2,000.00 per month, pursuant to the terms and language of Provision G of the Property Settlement and Custody Agreement executed by the parties, through November 3, 2004. *The parties agree that said alimony is not subject to modification.*

The Modified Agreement was approved by the court.

In 1994, Charlene petitioned to modify child support and for a rule to show cause. Charlene alleged that child support should be increased based upon David's increased income and that the various payments be made through the clerk of the court, inasmuch as David's deposits into Charlene's checking account were inconsistent, and Charlene

viewed David's access to her account "unnecessarily harassing." Charlene requested that David be held in contempt for his failure to maintain health insurance comparable to that in existence at the time of the dissolution, as provided in the Agreement, and for his failure to timely reimburse Charlene for his two-thirds portion of the medical expenses incurred for the children. Charlene also requested attorney's fees.

Thereafter, David filed *inter alia* his response and his petition to modify existing orders, together with a request for attorney's fees. Within his petition, David characterized the alimony, support, and college fund as:

non-taxable support . . . . . . . . . . . . . . . $830.18
taxable support . . . . . . . . . . . . . . . . . $2,000.00
contribution to children's accounts . . $395.17

By grouping all payments together, including the alimony amount, David concluded that his child support payments were 20% more than the maximum Child Support Guidelines amount. David reaffirmed his intention to pay a lump sum payment of $129,500.00 to Charlene as her "rightful share of marital assets."

After hearing testimony and evidence, the trial court entered special findings of fact and conclusions of law on August 31, 1995. Finding the alimony provision ambiguous, the trial court found the true nature of the provision to be one for child support. The court found that the payments were termed "alimony" for tax purposes. The court's order terminated the payments. Further, the trial court found *inter alia:* that changed circumstances warranted modification of support and issues related thereto; that David was not in contempt; and that Charlene's "legal and strategic positions" caused David to incur unnecessary expenses, allowing him to recover expenses and attorney's fees. This appeal ensued.

On appeal, Charlene presents several issues which we restate as:

(1) whether the trial court erred in interpreting Provision G of the Agreement;

(2) whether the trial court erred in modifying child support;

(3) whether the trial court erred in failing to find David in contempt of court;

(4) whether the trial court erred in confiscating a videotape which was not introduced into evidence; and

(5) whether the trial court erred in awarding expenses and attorney's fees to David.

■■■ Charlene requested special findings pursuant to Ind. Trial Rule 52(A). Our standard of review therefore mandates we first determine whether the evidence supports the findings and then whether the findings support the judgment. *Cooper v. Calandro,* 581 N.E.2d 443, 444–445 (Ind.Ct.App.1991), *trans. denied.* Inasmuch as the trial court is charged with determining the credibility of the witnesses, the findings or judgment will not be set aside unless clearly erroneous. T.R. 52(A). Clear error exists where the record does not offer facts or inferences to support the trial court's findings or conclusions of law. *Hrisomalos v. Smith,* 600 N.E.2d 1363, 1366 (Ind.Ct.App.1992).

The trial court found Provision G regarding "alimony" payments to be ambiguous as written and that it could be interpreted as a provision for child support rather than one addressing spousal maintenance or property settlement. This being so, the trial court allowed introduction of extrinsic evidence to show the circumstances surrounding its drafting. Charlene contends the admission of the extrinsic evidence and the trial court's ultimate determination as to Provision G to be in error.

Although David is an attorney and drafted the Agreements, David argues that the Agreements do not reflect his and Charlene's true intentions at the time they were created. However, the threshold issues are whether the provision for "alimony" could be construed as child support and whether an ambiguity exists allowing admission of parol evidence.

■■■ Upon dissolution of marriage, parties are free to craft their own settlement agreements. *See* IND. CODE § 31–1–11.5–10 (1993 Ed.). Such agreements are contractual in nature and binding. *Bowman v. Bowman,* 567 N.E.2d 828, 830 (Ind.Ct.App.1991).

■ In *Legge v. Legge*, 618 N.E.2d 50, 50–51 (Ind.Ct.App.1993), this Court was called upon to determine whether the term "alimony" as used in a South Carolina order constituted a property settlement or spousal maintenance. The *Legge* Court noted that the term is ambiguous[1] and consulted Black's Law Dictionary 67 (5th Ed.1979) which defined "alimony" as stemming from the Latin term "alimonia" meaning sustenance. The definition, together with the order's interchangeable use of the word with the phrase "separate maintenance and support" and their contingency upon the wife's remarriage, dictated a finding that the reference was for spousal support. Similarly here, the term "alimony" in the Agreement and the Modified Agreement could be subject to interpretation regarding its character as spousal maintenance or property;[2] however, the Agreements facially belie an interpretation which equates the term with child support.

Here, the alimony provision constituted maintenance. The Agreement unambiguously provides definite terms as to the amount, length, and manner of David's payment of monies to Charlene. An entirely separate provision addressed the issue of support for the parties' children. The Modified Agreement reiterated David's intention to pay the alimony until November 3, 2004 and stated in no uncertain terms that Provision G "is not subject to modification." Nothing in either the Agreement or the Modified Agreement placed similar restrictions on the payment of child support. To the contrary, Provision F specifically stated the "parties agree that support is subject to change."

■ A trial court may not modify a spousal maintenance agreement which states unambiguously that it cannot be modified.

*Voigt v. Voigt*, 645 N.E.2d 627, 630 (Ind.Ct. App.1994); *see Kizziah v. Kizziah*, 651 N.E.2d 297, 299 (Ind.Ct.App.1995) ("language foreclosing judicial modification of maintenance payments must be specific and unmistakable"); *Roberts*, 644 N.E.2d at 177 (unless parties specifically agree to contrary, agreement for spousal maintenance subject to court modification). As discussed above, the Modified Agreement executed in 1991 reiterates David's commitment to make the payments to Charlene and unambiguously states that "[t]he parties agree that said alimony is not subject to modification." The trial court erred by terming the payments "child support" and terminating the payment of alimony.

■ Although David drafted the Agreements, he argues that the provisions do not reflect the parties' true intentions at the time they were executed. He contends that the Agreements were drafted for "tax avoidance" purposes requiring extrinsic evidence to clarify their true nature. Assuming *arguendo* that the "alimony" payments were so termed in an effort to avoid taxes, once the Agreements were drafted in a manner to make them appear as maintenance and unambiguously not modifiable, the payments were just that—maintenance. A court cannot look beyond the clearly expressed provisions in a contract to speculate that the clear provisions were drafted to appear clear for some purpose but actually bore a covert purpose. The ambiguity allowing admission of parol evidence must appear on the face of the document; extrinsic evidence is not admissible in an attempt to create an ambiguity. The consequence of drafting the document to appear on its face clear is that it is clear. Further,

[i]f a document is clear and unambiguous on its face, no parol evidence may be uti-

1. The ambiguity, placed in context, revolves around correctly categorizing "alimony" as property or maintenance. There does not appear to be any concern that "alimony" may constitute child support.

2. Provisions for periodic payments in a dissolution decree may be determined to be maintenance rather than property when there exists: "(1) a specific designation as 'maintenance'; (2) provisions for termination of payments upon the death of either the wife or the husband; or (3)

the installments are to be made from future income." (Citation omitted.) "A property division is indicated by (1) a provision for interest that is characteristic of installment cash awards of marital property; (2) an amount that does not exceed the value of the marital assets; or (3) payments for an amount certain not terminable upon death or remarriage of the recipient." (Citation omitted.) *Roberts v. Roberts*, 644 N.E.2d 173, 177 (Ind.Ct.App.1994).

lized to determine the parties' true intentions respecting the document's application. [Only] if there is an ambiguity or if contradictory references in the document cloud the intent of the parties, [will] parol evidence [be] allowed in for the purposes of clarifying any ambiguity.

*OEC–Diasonics, Inc. v. Major,* 622 N.E.2d 1025, 1030 at fn. 2 (Ind.Ct.App.1993). In *Dusenberry v. Dusenberry,* 625 N.E.2d 458 (Ind.Ct.App.1993), this Court stated:

The public policy of this state favors separation agreements. A property settlement agreement incorporated into a decree of marriage dissolution is a binding contract and the trial court may not modify or revoke the settlement absent fraud, duress, or undue influence. Our statute gives the parties freedom to make continuing financial arrangements in the spirit of amicability and conciliation and such agreements are binding upon the parties if approved by the trial court.... Nevertheless, the intent of the parties to a property settlement agreement should be determined by the language employed in the document and it is only when the terms are ambiguous that other evidence of intent should be considered.

*Id.* at 463.

In his brief of appellee, David contends that the parties "intentionally created a latent ambiguity." David's admission that extrinsic evidence was necessary to create the ambiguity, which was not apparent on the face of the document, further substantiates a determination that his intention is to subvert the purpose of parol evidence. Because Provision G is unambiguous on its face, valid, and enforceable, it is irrelevant whether David, the drafter of the Agreements, now believes that he made a bad bargain with Charlene. The trial court erred both in allowing the introduction of collateral evidence to interpret Provision G and in modifying its provisions. Our resolution of this issue is dispositive of other sub-issues asserted by Charlene related to the alimony issue.

■■■■■ Next, Charlene contends that the trial court erred in finding a substantial change since the last Agreement and by modifying child support and matters related

thereto. To modify a child support order, the trial court must find a change in circumstances so substantial and continuing so as to render the existing terms unreasonable. *See* IND. CODE § 31–1–11.5–17(a) (1993 Ed.). This Court reviews a modification of a support order to determine whether the trial court abused its discretion. *Elliott v. Elliott,* 634 N.E.2d 1345, 1348 (Ind.Ct.App.1994). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Charlene alleges error in the determination that David need not contribute to a college fund established by the parties and by naming David administrator of the fund, because he "is the most qualified of the two parents to be the custodian of the children's college accounts." Pursuant to Provision F of the Agreement, David agreed to pay $1,225.35 per month in child support. As to college expenses, David further agreed to "be responsible for the college costs of the ... children." Subsequently, the Modified Agreement reduced David's obligation to $830.18 per month but required him to pay to Charlene "$395.17 per month to Charlene for direct deposit by [her] into a children's college fund for the future benefit of the ... children." As Charlene points out, the net result of the above modifications allowed David to prepay his obligation for college expenses of the children out of his obligation for child support.

■■■■ Finding the college funds to be in the nature of child support and David to now be the most qualified parent to be the custodian of such funds, the trial court nullified the provision in the Modified Agreement and made David custodian of the children's college accounts. Charlene correctly notes that if the college account was a portion of child support, then as custodial parent that amount falls within the funds that she administers and to which she was entitled for the benefit of the children. Inasmuch as the trial court viewed the college account as a portion of support, those monies already paid into the account is support already paid. A petition to modify child support operates pro-

spectively only; thus, a trial court may not retroactively reduce or terminate support. *In re Marriage of Loeb,* 614 N.E.2d 954, 958–959 (Ind.Ct.App.1993).

■ A child support order may include monies to be applied toward a child's secondary education. IND. CODE § 31–1–11.5–12(b) (1993 Ed.). Although modifiable by the trial court, parties to a dissolution are also free to include a provision for payment of college expenses within their settlement agreement. *See In re Marriage of Loeb,* 614 N.E.2d at 957 (provision in settlement agreement that father would pay support until daughter graduates from college held unambiguous and nonmodifiable).

■ As Charlene points out, it is possible that, given his education, David had always been the most qualified party to be custodian of their children's college accounts. Nonetheless, the parties agreed in both the Agreement and the Modified Agreement to allot this task to Charlene. David argues that Charlene is irresponsible because she has dissipated much of the $129,500.00 received as part of the marital estate. However, Charlene testified these funds were used, in part, to pay off debts and to pay for a first and second mortgage on her residence. Further, Charlene introduced into evidence a detailed ledger for transactions between 1991–1994, which she stated she uses to monitor her expenses and to record her expenditures and payments received. The detailed ledger indicates that Charlene is a capable administrator of finances. Further, the trial court did not find that Charlene mishandled funds.[3]

■ Inasmuch as David failed to produce evidence to show how circumstances had changed to warrant a modification of the contractual provisions, the trial court made no finding of a change in circumstances, and the college account appears to be a portion of support to which Charlene was entitled and which cannot be retroactively modified; the trial court erred by making David custodian of the accounts.[4] However, it was not error for the trial court to make a combined support order which does not require a specific contribution to the college account. In a combined order, Charlene is free to deposit any portion into an account for the future college expenses of the children.

Next, in its calculation of child support, the trial court found "the increased age of the children ... makes it easier for Charlene ... to enter the work force" and that she "has an income earning capability of at least $181.00 per week, but chooses not to work." Concluding that she is voluntarily unemployed, the trial court imputed income to her in this amount which reflects part-time employment at the minimum wage level. Charlene contends this was in error.

■ The Indiana Child Support Guidelines specifically acknowledge parents often take drastic measures, such as becoming unemployed or underemployed, merely to liberate themselves from their child support obligations. The guidelines attempt to discourage such efforts by giving the trial court wide discretion in imputing potential income to a parent when the trial court is convinced the parent's unemployment or underemployment has been contrived for the sole purpose of evading support obligations. *See* Ind. Child Support Guideline 3(A)(3); *Matter of Paternity of Buehler,* 576 N.E.2d 1354, 1355 (Ind.Ct.App.1991). To determine whether potential income should be imputed, the trial court should review the obligor's work history, occupational qualifications, prevailing job opportunities, and earning levels in the community. *Castaneda v. Castaneda,* 615 N.E.2d 467, 471 (Ind.Ct.App.1993).

■ The record discloses Charlene has a high school diploma, has prior work experi-

---

**3.** It is noteworthy that the trial court's order did not require David to hold the funds for the sole purpose of college expenses for the three minor children of his marriage to Charlene. While such may be implied, it appears that a substantial portion of the support payments made since the Modified Agreement were returned to David.

**4.** David's brief of appellee indicates that Charlene agreed to allow him to administer the fund; however, the pinpoint citation given by David is to a deposition without any indication where the evidence appears in the record of proceedings. This Court will not search the record, especially one consisting of eight volumes and over 1700 pages, to establish parties' contentions.

ence as an orthodontic assistant, and is in good health. She had taken a college course but failed to follow through with her continued education. Also, she had established her own jewelry business in 1991 in which she made and sold jewelry to stores, but later abandoned the business venture. Further, she engages in volunteer work at her children's school. There is evidence to support the trial court's finding which imputes some income to Charlene.

Next, Charlene alleges error in the trial court's adoption of one of David's unsigned and unverified worksheets incorporated into the order and used to determine the parties' support obligations. In *Beardsley v. Heazlitt,* 654 N.E.2d 1178, 1181 (Ind.Ct.App. 1995), the party who requested modification of child support "failed to comply with the Guidelines and submit a completed, verified and signed worksheet." This Court on appeal found that the trial court would have been in error had it modified child support based upon an unverified and unsigned worksheet. *Id.*

As noted in *Beardsley,* the significance of an unverified, unsigned worksheet is more relevant in the context that the petitioner is self-employed, *id.,* and here, Charlene requests that the trial court's finding as to David's income be found in error.

Child support orders may be modified only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

*Id.* at 1180, *quoting* IND. CODE § 31–1–11.5–17(a).

The trial court found that David had a "present weekly income-earning capability of $2,297.00." [5] The annualized amount of approximately $120,000.00 is a vast departure from the income David reported on his tax returns for 1992—$315,000.00, 1993—$204,000.00, and 1994—$229,000.00. When there is doubt as to a party's income, especially where a party receives commissions or bonuses or has the ability to defer payments to distort the true income for the short term, tax returns for the preceding two or three years should be consulted. *See* Commentary to Ind. Child Support Guidelines 3(B)(2). David testified that he believed his income should be set at $140,000.00 per year based upon the changing nature of his law practice and because he expected to earn less income in the future. Also, David contended that his income should be reduced because he suffered a $42,000.00 stock margin loss in 1993 of which he could deduct only $3,000.00. David has passive income from several properties he owns and received in the property settlement at the time of the parties' dissolution. In determining weekly gross income from self-employment, the guidelines include gross income from the operation of a business, rent and royalties as well as in-kind payments which reduce personal living expenses such as a car or reimbursed meals, minus ordinary and necessary expenses. Child Supp. G. 3(A)(2). Self-employment income and expenditures "should be carefully reviewed in order that [deductions] be restricted to reasonable out-of-pocket expenditures necessary for the production of income." *Id.* The income included for guidelines purposes is more inclusive than that reported for income tax purposes, because specifically excluded from "ordinary and necessary" expenses are depreciation, investment tax credits, and certain other business expenditures allowed by the IRS. *Haverstock v. Haverstock,* 599 N.E.2d 617, 620 (Ind.Ct.App.1992).

---

**5.** The record contains two unverified, unsigned worksheets as David's exhibits. The worksheet dated June 6, 1995 places David's weekly gross income at $2,428.00. The worksheet dated fifteen days later places David's income at only $2,297.00.

Given the error in relying upon conflicting unverified, unsigned worksheets submitted by David, the large discrepancy between previous years' reported income and the court's determination of David's present income potential, and the careful scrutiny required to modify child support especially in view of self-employment income, the determination of child support must be reversed for recalculation.

Charlene also questions the trial court's alteration of the Agreement regarding her ability to claim the children for tax exemption purposes. Charlene correctly notes that the trial court did not make specific findings to support a determination that a substantial change required modification of the previous order. However, because the trial court terminated the alimony payments and imputed only minimum wage to Charlene, it may be surmised that under those circumstances Charlene would not utilize the tax exemptions. With the reversal of the order concerning alimony, the trial court must redetermine the tax exemption claim. *See Skinner v. Skinner,* 644 N.E.2d 141, 149 (Ind.Ct.App. 1994) (under appropriate circumstances may order custodial parent to sign waiver of presumed right to claim children as dependents on income taxes; purpose to claim exemption is to maximize amount of support for children).

In a related issue, the trial court ordered that David be allowed to make his support payments to Charlene by depositing the same directly into her checking account or by direct payment to the clerk of the court. The Settlement Agreement originally provided child support be paid "to Charlene." The Modified Agreement clarified the manner of payment by providing, in pertinent part:

> David agrees to pay $395.17 per month *to Charlene for direct deposit by Charlene* into a children's college fund for the future benefit of the . . . children. . . .

Between the date of the dissolution and February 1994, David had been making payments in this manner. IND. CODE § 31–1–11.5–13 (1993 Ed.) allows for the payment of support "through the clerk of the circuit court . . . unless the court has reasonable grounds for providing or approving another method of payment."

■ Charlene's 1994 petition specifically requests that David not have access to her bank account, which she viewed as unnecessarily harassing. The trial court made no finding as to the need for David to have access to Charlene's accounts. Under the circumstances, the order should be altered to extinguish David's option to deposit support payments directly into Charlene's account.

■ Next, Charlene complains that the trial court erred by failing to find David in contempt for his failure to maintain comparable health insurance benefits for the children and for failure to timely reimburse her for out-of-pocket expenses once the claims were paid to him by the insurer. All orders contained in a dissolution decree may be enforced through contempt proceedings or any other remedies available for the enforcement of a court order. *Kirchoff v. Kirchoff,* 619 N.E.2d 592, 596 (Ind.Ct.App.1993). This Court will reverse the trial court's refusal to hold a party in contempt only upon a showing of an abuse of discretion in the trial court's determination that the party did not willfully disobey the order. *Id.*

■ The Agreement incorporated into the original dissolution order required David to provide health insurance coverage comparable to that in existence at the time of the dissolution. At that time, the insurance benefit plan paid 80% of medical bills incurred, after the payment of a deductible. Although David's law firm did not change providers, by the time of the hearing the health insurance benefits paid only 50% of medical bills. Charlene contends that the Agreement required David to purchase a supplemental policy to maintain comparable coverage.

While a 30% change in benefit coverage appears substantial, the trial court did not abuse its discretion in failing to find David in contempt regarding comparable health insurance. The evidence demonstrated that coverage for the firm was changed, there was no evidence of willful conduct on David's part, and David is responsible for the bulk of the medical bills over a set amount. Conse-

quently, the determination as to the health insurance benefits will not be disturbed.

However, David testified that he did not reimburse Charlene for some claims paid by the health insurance providers because "[t]his is not something that has happened very often" and because he pays "her a lot of money in support." On appeal, David contends that Charlene did not prove that these incidents were "egregious." As David recognized in his statement of the standard of review, there is no requirement that the conduct be "egregious." The trial court erred in failing to find David in contempt concerning the retained payments.

Additionally, David refused to reimburse Charlene for one child's eye doctor bill because, as he testified, "I'm ordered to pay medical and dental. I consider that optical and figured she could pay that out of the support I pay her. Again I don't think it's a major issue." The trial court found no outstanding medical or support payment arrearages; thus, David was discharged from the rule to show cause.

As in the case of the retained payments, the uncontroverted evidence from David was that he refused to pay the bill. His testimony indicates that some basis for disagreement could exist but that he chose to interpret the order in a manner which would relieve him from payment. The dual reason for not paying the bill was that he believes Charlene receives adequate money through support to pay the bill. David appears to imply that the money Charlene receives for child support is gratuitous. Such is not the case. David's testimony discloses a developing pattern of unilaterally determining that he need not comply with the order in place. Courts do not countenance such action. By his own admission, David was required to reimburse Charlene for "medical and dental" payments. The trial court erred by not addressing the question whether eye doctor bills are apportioned as all other medical bills.

Next, Charlene asserts that the trial court acted improperly when at David's behest the court confiscated Charlene's copy and ordered her to retrieve from various sources including attorneys and mental health care providers all copies of a videotape made by David. The videotape was not entered into evidence in the proceedings and was not specifically addressed by the original decree or the decree as modified in 1991. David contended that he was to receive the videotape and all copies as property settlement. The trial court ordered all copies sealed and placed with the court for safekeeping. No final determination as to the videotape and copies appears in the trial court's order.

The legislature intends finality as to the disposition of property contained in dissolution decrees. *Voigt v. Voigt*, 645 N.E.2d 623, 626 (Ind.Ct.App.1994), *trans. den.* (statutes require final determination not to be modified or revoked unless so specifically stated or in case of fraud). The parties knew of the existence of the tape at the time of the dissolution. It may be presumed that the property was properly disposed of within the original order. The Agreement adopted by the trial court stated that the personal property had been divided in accordance with the parties' wishes.

The strong policy favoring finality has multiple purposes including the elimination of vexatious litigation which often accompanies dissolution proceedings. *See Dusenberry*, 625 N.E.2d at 461. The modification of a single item may require adjustment of another to avoid inequity and or may require reconsideration of the entire property division. *Id.* Here, the trial court abused its discretion by revisiting the proper disposition of a single item of personal property not specifically addressed by the decree. The videotape and copies should be returned to Charlene.

As a result of these proceedings, David incurred attorney's fees in the amount of $2,000.00. Finding Charlene to have sufficient cash in her bank accounts to pay both for her own and David's attorney's fees, she was apprised of David's request for fees at the commencement of the proceedings, and she took legal positions which caused David to incur unnecessary expenses and attorney's fees; the trial court ordered Charlene to pay

David's attorney's fees. Charlene argues the trial court acted improperly in doing so.

■ The decision to grant a party attorney's fees lies within the sound discretion of the trial court. IND. CODE § 31-1-11.5-16 (1993 Ed.). Reversal for such an award is warranted only where it is against the logic of the facts and circumstances of the case. *In re Marriage of Tearman*, 617 N.E.2d 974, 978 (Ind.Ct.App.1993). When making an award of attorney's fees, the trial court must consider the relative resources of the parties, their economic condition, their abilities to engage in gainful employment with an adequate income, and such other factors that bear on the reasonableness of the award. *In re Marriage of Lewis*, 638 N.E.2d 859, 861 (Ind.Ct.App.1994).

■ The trial court imputed minimum wage employment income to Charlene while the evidence disclosed that, as an attorney, David earned a minimum of $204,000.00 in the three-year period prior to the hearing. Also, although there was evidence that Charlene's bank account had contained approximately $129,500.00 in cash as settlement of the marital assets as a result of the dissolution, the trial court did not make a similar finding as to sums existing in David's accounts.

Moreover, as the legal positions taken by Charlene are not completely without merit and, in fact, Charlene has prevailed on many of the issues upon appeal, the trial court improperly awarded fees on this basis. The issue of attorney's fees must be remanded for reconsideration

The decision of the trial court is affirmed in part, and reversed and remanded in part with instructions consistent with this opinion.

Affirmed in part, and reversed and remanded in part.

DARDEN and RILEY, JJ., concur.