FOR PUBLICATION

ATTORNEY FOR APPELLANT
: 
ATTORNEY FOR APPELLEE
:

DEBRA LYNCH DUBOVICH STEVEN L. LANGER

Levy & Dubovich Langer & Langer

Highland, Indiana Valparaiso, Indiana

IN THE

COURT OF APPEALS OF INDIANA

FRED ADLER, )

)

Appellant-Respondent, )

)

vs. ) No.  37A04-9808-CV-401

)

SUZANNE R. ADLER, )

)

Appellee-Petitioner. )

APPEAL FROM THE JASPER CIRCUIT COURT

The Honorable Robert W. Thacker, Special Judge

Cause No.  37C01-9009-DR-232SJ

June 30, 1999

OPINION - FOR PUBLICATION

RUCKER, Judge

This is a post-dissolution action involving among other things the interpretation of certain provisions of an irrevocable trust.  Fred Adler ("Father"), settlor of the trust, appeals an order entered in favor of Suzanne Adler ("Mother").  Father raises several issues for our review which we consolidate and rephrase as:  (1) did the trial court have jurisdiction to interpret and enforce provisions of the trust; (2) did the trial court modify the parties' property settlement agreement and if so did the trial court err in so doing; (3) was Father in contempt of court for directing the trustee to pay his daughter's educational expenses where the trial court had ordered Father to pay such expenses; (4) did the trial court err in awarding Mother attorney fees and refusing to award Father attorney fees. 

We affirm in part and reverse in part. 

Mother and Father were married in September 1975; two children, Carl and Selly,  were born as a result.  In November 1991 the marriage was dissolved with the trial court approving the parties' child custody and property settlement agreement.  The agreement provided in part that certain assets of Adler Ventures, Ltd. would be held in an irrevocable trust for the benefit of the two children.  First Bank of Whiting was named as trustee.  The agreement also showed that the Bank was a limited partner in Adler Ventures owning an 80% interest therein, and that Father was the general partner owning a 20% interest.  According to the agreement, upon termination of the trust Father's 20% interest in Adler Ventures would be divided equally between himself and Mother.  Also, the agreement acknowledged that Father would receive reasonable compensation for his services as general partner.

 In August 1997 Mother and Father entered an agreed order that was approved by the trial court.  The order provided in part that Selly would attend a boarding school in Sheffield, Massachusetts and that the entire cost of the schooling would be paid in full by Father. Shortly thereafter, at Father's direction the trustee issued Father several checks two of which were made payable to the boarding school for expenses associated with Selly's education.  Another check was issued to Father as reimbursement for certain unidentified school expenses he had paid on Selly's behalf.  A fourth check was made payable to Father for $3,362.00 as a 20% reimbursement.  The record also shows that in April 1997, before the agreed order was entered, Father sent Mother a written notice indicating that he had withdrawn $26,000.00 from the trust.  According to the notice the withdrawal was made to compensate Father for his services as a general partner in Adler Ventures.  The compensation was made retroactive to 1981, the date the trust was established. 

Thereafter Mother filed a petition for rule to show cause complaining that Father was in contempt of court for withdrawing monies from the trust to pay his court ordered obligations.  In the same petition Mother also sought to modify the property settlement agreement.  Mother complained alternatively that Father's retroactive withdrawal of funds violated certain provisions of the trust or if no violation occurred then the withdrawn funds were marital assets for which she was entitled to an equitable share.  Father responded by filing a motion to dismiss arguing, among other things, that the trial court lacked jurisdiction to entertain Mother's petition.  The trial court denied Father's motion and after conducting a hearing entered an order that contained several components:  (1) Father was found in contempt of court for using trust funds to pay Selly's school expenses as opposed to paying them himself; (2) as a sanction for contempt Father was ordered to pay another account all monies withdrawn from the trust that Father used to pay Selly's educational expenses; (3) Father was ordered to repay the trust $16,000.00 which, according to the court, represented excess management fees; (4) Father was ordered to return to Adler Ventures any monies he received representing his 20% interest; and (5) Father was ordered to divide equally with Mother any future distributions he received from Adler Ventures, excluding management fees.  The Court also awarded Mother attorney fees.  Father now appeals.

I.

Father first raises a number of issues and subissues all of which fall under the general heading of whether the trial court possessed jurisdiction over the trust and trust assets. Although not clearly articulated in his brief, Father's argument implicates only certain aspects of the trial court's judgment, namely that portion of the order directing Father to repay the trust $16,000.00 and that portion of the order directing Father to return to Adler Ventures any monies Father received representing his 20% interest.  According to Father these are matters of probate jurisdiction and not matters to be resolved by a court exercising jurisdiction in a post-dissolution proceeding. 

There are three types of jurisdiction:  (1) jurisdiction of the subject matter, (2) jurisdiction of the person, and (3) jurisdiction of the particular case.  
Browning v. Walters
, 620 N.E.2d 28, 31 (Ind. Ct. App. 1993).  Only subject matter jurisdiction and jurisdiction of the particular case are relevant here.  Subject matter jurisdiction refers to the power of a court to hear and decide a particular class of cases.  
Putnam County Hosp. v. Sells
, 619 N.E.2d 968, 970 (Ind. Ct. App. 1993).  The issue of subject-matter jurisdiction is resolved by determining whether the claim involved falls within the general scope of authority conferred on a court by the Indiana Constitution or by statute.  
Id.
  In this case, to the extent Father is arguing that the Jasper Circuit Court lacks subject-matter jurisdiction to resolve matters concerning trusts and probate, his argument fails.  Ind. Code § 33-4-4-3 provides "[t]he circuit court has original jurisdiction in all civil cases and in all criminal cases, except where exclusive jurisdiction is conferred by law upon other courts of the same territorial jurisdiction."  Consistent with Ind. Code § 33-4-4-3 we have held that circuit courts in Indiana have exclusive jurisdiction over all probate matters except where otherwise provided by statute.  
In re Plummer’s Estate
, 141 Ind. App. 142, 219 N.E.2d 917, 921 (1966).  Matters involving trust administration are civil in nature and generally heard by the probate court.  In the case before us there is no statute restricting the probate jurisdiction of the Jasper Circuit Court.  Thus, it is apparent that the court in this case has jurisdiction to hear and resolve matters of trusts and probate.  In any event Father's subject matter jurisdiction argument fails also for another reason.  As we show below, contrary to Father's contention, the trial court  was not exercising its probate jurisdiction in this instance.  Rather, the court was exercising jurisdiction as a dissolution court.

Father also contends the trial court lacked jurisdiction over this particular case.  As Father correctly points out a  court can have subject matter jurisdiction over a class of cases but not have jurisdiction over a particular case.  "'Jurisdiction of the particular case refers to the right, authority, and power to hear and determine a 
specific case
 within the class of cases over which a court has subject matter jurisdiction.'"  
Harp v. Indiana Dept. of Highways
, 585 N.E.2d 652, 659 (Ind. Ct. App. 1992) (quoting 
City of Marion v. Antrobus
, 448 N.E.2d 325, 329 (Ind. Ct. App. 1983)) (emphasis in the original).  Whether a court has jurisdiction to hear a particular case depends upon the existence of the particular facts contained therein.  
Matter of Adoption of H.S.
, 483 N.E.2d 777, 780 (Ind. Ct. App. 1985).  According to Father the trial court lacked jurisdiction over this particular case because: (1) the Adler Venture Trust, although mentioned in the divorce decree, was not marital property and thus the trial court had no authority to enforce its terms or interpret its provisions, (2) neither the beneficiaries nor the trustee were given notice that the trial court would enter an order affecting Trust assets, and (3) Mother lacked standing to raise any issue concerning the Trust in that she had only a speculative contingent remainder interest.  

Father's contention that the Trust was not marital property is inconsistent with the record.  As a part of the dissolution decree the trial court approved the parties' "Marital Property Settlement, Custody, Visitation and Child Support Agreement."  R. at 235.  This elaborate and detailed twenty-two page document included a section entitled "Adler Ventures, LTD" that provided:

1. It is agreed and stipulated by the parties that Adler Ventures, Ltd., is a limited partnership in which the limited partner is First Bank of Whiting, as  Trustee for Fred Adler's four (4) children, two (2) of whom are children from a prior marriage, namely, Vanessa Adler and Monica Adler.  As Vanessa and Monica have already had the benefit of their share of the trust, the remaining assets are to be used exclusively for the benefit of Carl and Selly in accordance with the terms of the Agreement of Limited Partnership of Adler Ventures, Ltd., and the March 20, 1981 Trust Agreement.  First Bank of Whiting, as Trustee, is the limited partner owning an eighty percent (80%) interest. Husband, who owns twenty percent (20%) of Adler Venture[s], Ltd., is the general partner.

2. It is further agreed and stipulated by the parties that Husband shall continue to act as general partner of Adler Ventures, Ltd., and upon termination of the trust in accordance with the terms and provisions of the trust agreement, Husband's twenty percent (20%) interest shall be divided and distributed equally between himself and Wife.

3. It is further agreed and stipulated by the parties that when Husband withdraws any funds from Adler Ventures for any reason whatsoever, he shall notify Wife in writing of the withdrawal and supply Wife with all documentation relating to the withdrawal.

R. at 252-53.  Although the Trust instrument itself was not presented to the dissolution court, it is clear that the Trust was more than just "mentioned" in the divorce decree as Father asserts.  Rather, by agreement of the parties the Trust was made a marital asset and included as a part of the parties' property settlement agreement.  It follows that in this post-dissolution action Mother has standing to challenges any conduct by Father that was not consistent with the terms and conditions of the dissolution decree.  Indeed it would be incongruous for the dissolution decree to provide that Father give Mother written notice and documentation regarding any funds he withdraws from the Trust and then leave the dissolution court powerless to sanction Father should he fail to provide documentation, or if the documentation that is provided demonstrates excessive or inappropriate withdrawals.

As for Father's contention that neither the beneficiaries nor the trustee was given notice of this action, we conclude that no such notice was necessary.  If this were a case involving purely matters of trust administration, then Father's argument would be more persuasive.
(footnote: 1)  However this case was  presented to the trial court for enforcement of its order of dissolution.  That it involved interpreting and enforcing certain trust provisions was made necessary by the parties own property settlement agreement.  By its express terms the  agreement provides that once the trust terminates Wife is entitled to one half of Father's twenty percent (20%) interest.  Here the trial court was convinced that by receiving  $3,362.00 as a 20% reimbursement and by receiving $26,000.00 as management fees retroactive to 1981, Father was attempting to diminish the amount of trust assets that would be available to Wife upon termination of the trust.  Accordingly the trial court ordered Father to repay the Trust $16,000.00 representing excess management fees and any monies Father received representing his 20% interest.  The trial court possessed jurisdiction over this particular case to enter such an order.  And we find that the order was not erroneous.

II.

Father next contends the trial court erred in modifying the property settlement agreement.  Mother counters this issue is waived because it was not presented to the trial court.  We disagree with Mother’s assertion.  As we indicated above among other things the property settlement agreement provided that upon termination of the trust, Mother would receive one-half of Father’s 20% interest in Adler Ventures.  Pointing to Father's receipt of a 20% disbursement from Adler Ventures, Mother sought to modify the property settlement agreement complaining alternatively that either the withdrawal violated the terms of the trust or that the withdrawal of funds represented marital assets of which she was entitled to an equitable share.  In response to Mother's complaint the trial court declared "in the future and to the extent that Husband receives any distributions from Adler Ventures, he shall pay Wife one-half of any such distribution, excluding management fees."  R. at 818.  We fail to see how Father waived raising this issue when Mother presented the matter to the trial court and the trial court ruled on the issue.  In any event the trial court's order modified the original settlement agreement by awarding Mother half of any distribution Father received prior to and regardless of the date the trust is terminated.  

A property settlement which is incorporated into a final divorce decree is a binding contract, and the dissolution court may not modify that settlement absent fraud, duress, or undue influence.  
Johnson v. Johnson
, 575 N.E.2d 1077, 1080 (Ind. Ct. App. 1991); 
see also
 I.C. § 31-15-2-17(c).  In this case, Mother cited fraud as a basis for modification.  However, Mother failed to demonstrate the existence of fraud.  Further, the trial court itself did not make a finding of fraud.  Rather, the court stated that "not only is this Court troubled by the fact that Husband retroactively and unilaterally increased his management fees, but the arbitrary and capricious manner in which Husband made the determination as to the amount of his fees is very troublesome and disturbing . . . ."  R. at 816.  These comments cannot be interpreted as a determination that Father engaged in fraud either before or after the parties entered their settlement agreement.  Because Mother failed to carry her burden of demonstrating fraud, we conclude the trial court erred in modifying the parties' property settlement agreement.  On this issue the judgment of the trial court is reversed.

 III.

Father also complains the trial court abused its discretion in finding him in contempt of court.  Father acknowledges that the trust paid the cost of Selly's educational expenses.  He argues, however, that a reasonable reading of the court's order does not prohibit the trust from making those payments.  Rather, Father asserts that the order should be read to mean that "to the extent either parent is responsible for their daughter's educational costs, the Father will pay the 'full amount.'"  Brief of the Appellant at 37.  Father maintains that the trial court erred in finding him in contempt because "[t]here is no evidence that, contrary to the Agreed Order, the Father ever attempted to hold the former wife liable for even part of the daughter's schooling expenses."  
Id.

Although facially appealing Father's argument is not persuasive.  In order to be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something.  
Shively v. Shively
, 680 N.E.2d 877, 882 (Ind. Ct. App. 1997).  A person failing to abide by the court's order bears the burden of showing that the violation was not willful.  
Id.
  We will only reverse the trial court's judgment of contempt if there is no evidence to support it.  
Id.
  The order providing the bases for the trial court finding Father in contempt dictates in relevant part:

The entire cost of the schooling shall be paid in full by Father without any contribution from Mother.  Further, any additional extraordinary educational related expenses including but not limited to tutoring, school related travel, study abroad programs, summer travel, and special housing shall be determined and approved by and paid for by the Father.

R. at 502.  This order is unambiguous.  Whether Father ever attempted to hold Mother liable for the expenses is not at issue.  The issue is whether Father evaded the court's order by not paying in full for Selly's educational expenses.  It is clear that Father failed to do that which was ordered:  pay the entire cost of Selly's schooling.  Father also counters that he did not willfully fail to comply with the order because the trustee had sole discretion over the trust's funds, and Father never exerted control over the trustee.  We disagree.  Evidence introduced at the hearing revealed that upon Father's oral direction the trustee debited the trust for $16,810.00, issued a check to Father for reimbursement of Selly's school expenses in the amount of $2,295.00, issued a check to the Berkshire School in the amount of $14,265.00 for Selly's first term tuition, and issued a check in the amount of $250.00 for Selly's school health insurance.  The evidence demonstrated that trust expenditures were not completely beyond Father's control, and that Father specifically directed the trustee to pay for his daughter's educational expenses.  We conclude the trial court did not err in finding Father in contempt of court. 

IV.

Lastly, Father contends the trial court erred in awarding Mother attorney fees and denying his own request for fees.  Regarding the fees awarded Mother, Father complains the trial court did not take into account the parties' relative economic resources.  Without regard to economic resources, once a party is found in contempt, the trial court has "the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions."  
Crowl v. Berryhill
, 678 N.E.2d 828, 832 (Ind. Ct. App. 1997).  Here, because Father was in contempt the trial court did not err in awarding Mother $2,000.00 in attorney fees.

As for Father's complaint that the trial court erred in failing to grant his own request for fees, we disagree.  Apparently anticipating that he might prevail on some of the issues upon appeal, Father cites 
DeBoer v. DeBoer
, 669 N.E.2d 415, 427 (Ind. Ct. App. 1996), 
trans. denied
, for the proposition that "[i]f a party prevails, even only in part, upon appeal, the issue of the attorney fee award must be remanded with the other issues for reconsideration."  Brief of the Appellant at 38.  We disagree with Father's interpretation of 
DeBoer
.  In that case the trial court awarded attorney fees in Father's favor because Mother's "'legal and strategic positions'" caused Father to incur unnecessary expenses.  
DeBoer
, 669 N.E.2d at 420.  Upon appeal we determined among other things that Mother's legal positions were not completely without merit and that in fact she had prevailed on many of the issues on appeal.  
Id.
 at 427. We concluded therefore "the trial court improperly awarded fees on this basis.  The issue of attorney's fees must be remanded for reconsideration."  
Id.
  Contrary to Father's argument 
DeBoer
 does not stand for the proposition that the trial court's award of attorney fees is later rendered erroneous when a party prevails on some issues upon appeal.  Although the trial court may, it is not required to award attorney fees and expenses.  Rather the trial court is afforded broad discretion in that regard.  There is no abuse of discretion for the trial court not to do that which it is not required to do.  
Rump v. Rump
, 526 N.E.2d 1045, 1047 (Ind. Ct. App. 1988), 
trans. denied
.  In this case the trial court declined to award Father attorney fees.  The trial court did not abuse its discretion in so doing.

In conclusion we reverse that portion of the trial court's order directing Father to divide equally with Mother any future distributions he may receive from Adler Ventures.  In all other respects the judgment of the trial court is affirmed. 

Judgment affirmed in part and reversed in part.

DARDEN, J., and SULLIVAN, J., concur.

FOOTNOTES
1:  With few exceptions a trust is generally administered without continuous court intervention.  
See
 I.C. § 30-4-6-2; 
Matter of Raymond Heeter Trust
, 681 N.E.2d 240, 243 n.1 (Ind. Ct. App. 1997).  Unless the trust provides otherwise, a trustee may perform every act necessary or appropriate for the purposes of the trust without court authorization.  I.C. § 30-4-3-3.  However, "[i]f there is reasonable doubt with respect to any matter relating to the administration of the trust, the trustee is entitled to be instructed by the court."  I.C. § 30-4-3-18; 
see
 
also
 
In re Trust of Johnson
, 469 N.E.2d 768, 771 (Ind. Ct. App. 1984), 
trans. denied
 (stating that the trustee is not compelled to act at his peril in the administration of the trust).  In like fashion unless the trust provides otherwise a trustee has the duty "[t]o defend actions involving the trust estate."  I.C. § 30-4-3-6(b)(10).  In addition where a party seeks court intervention concerning a trust, notice must be given to any person "whose rights may be affected or upon whom a liability might be imposed by any proceeding."  I.C. § 30-4-6-6.