


FILED
Nov 20 2024, 9:39 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

In re the Paternity of H.F.D.S.

Alyshia Kalis,

*Appellant-Petitioner*

v.

Patrick Deliget Simmons,

*Appellee-Respondent*

---

November 20, 2024

Court of Appeals Case No.
24A-JP-1868

Appeal from the Lake Superior Court

The Honorable Shawn T. Olsen, Special Judge

Trial Court Cause No.
45D03-1509-JP-1162

---

**Opinion by Judge Vaidik**
Chief Judge Altice concurs.
Senior Judge Crone dissents with separate opinion.

**Vaidik, Judge.**

# Case Summary

[1] Alyshia Kalis ("Mother") and Patrick Deliget Simmons ("Father") entered an agreement that provided for joint legal and physical custody of their son, H.F.D.S. ("Child"), and that Mother's residence was designated as Child's primary residence for school purposes. After Child attended Kindergarten through third grade in Crown Point, Mother moved to Griffith and intended to enroll Child there. Father moved to modify the school-designation provision in their agreement and requested a preliminary injunction. The trial court issued a preliminary injunction preventing Mother from enrolling Child in Griffith schools. Mother now appeals, arguing the trial court erred in issuing the injunction. We affirm.

# Facts and Procedural History

[2] Child was born in June 2015. In January 2016, Father's paternity was established. That same month, the trial court entered an agreed order that the parties had "joint legal custody with Mother having physical custody of [Child], subject to Father's right of visitation." Appellant's App. Vol. II p. 58. In 2017, the trial court entered a second agreed order that the parties, who lived in Crown Point, shared legal and physical custody of Child:

> 2. By agreement, the parties shall share joint legal and physical custody of [Child]. The parties shall jointly make decisions relating to [Child's] education, health, religious upbringing, extracurricular activities, day care providers and his general

welfare and well-being. The parties agree to always act in [Child's] best interest when making decisions on his behalf.

3. That Mother's residence shall be designated as [Child's] primary residence for school purposes.

*Id.* at 61. The order also provided that the parties agreed it was in Child's "best interest that they have equal parenting time with [him]." *Id.* at 62.[1]

[3]    From Kindergarten (2020-21) through third grade (2023-24), Child attended schools in Crown Point Community School Corporation. For one nine-month period, Mother temporarily moved from Crown Point to Griffith before moving back to Crown Point. During that time, the parties agreed to keep Child enrolled at Crown Point notwithstanding the 2017 agreed order that provided "Mother's residence shall be designated as [Child's] primary residence for school purposes."

[4]    Around January 2024, during Child's third-grade year, Mother moved back to Griffith (she remains there today). Starting that May, the parties filed "at least eight different substantive motions and a variety of other responses, replies, and ancillary motions." *Id.* at 31; *see also id.* ("Years of détente . . . gave way to a multitude of motions between the parties, many asserting an emergency exists,

---

[1] In 2019, the trial court entered a third agreed order that modified child support and clarified Father's parenting time in light of his work schedule but otherwise "re-affirmed" the prior agreed orders. Appellant's App. Vol. II p. 68.

before the end of [Child's] 2023-2024 academic school year."). While these motions were pending, the parties agreed to the appointment of a guardian ad litem (GAL), that Child would begin counseling with Dr. Anthony Helma, and that they would submit to psychological evaluations.

[5] As relevant here, on May 8 Father filed a "Verified Petition for Modification of Child's School Designation and Request to Enjoin Mother from Removing Child from School." *Id.* at 78. As the August start date of school approached, Father requested an emergency hearing on his petition. *See id.* at 103. Father alleged that Mother wanted to enroll Child in Griffith Public Schools for fourth grade (which started August 19), but he wanted Child to remain at Crown Point Community School Corporation (which started August 14). Asserting that it was in Child's best interests to continue school in Crown Point, Father asked the trial court to modify the school-designation provision in the 2017 agreed order and issue an injunction preventing Mother from removing Child from Crown Point schools.

[6] On July 29, the GAL filed a report that the parties had not agreed where Child would attend school for the 2024-25 school year and that the "discord between the parents is putting [Child] in immediate danger of emotional harm by leaving him squarely in the middle of his parent[s'] dispute." *Id.* at 105. The GAL noted that "[b]y all reports [Child] is thriving academically and socially" at Crown Point, that he has been "inconsistent in his wishes concerning school," and that she recommended "not moving" Child from Crown Point. *Id.* at 106. A hearing

was set for August 1 to determine whether a "preliminary injunction should be entered." *Id.* at 108.

[7] At the hearing, the GAL testified that she believed it was in Child's best interests to attend school in Crown Point and that he would be "harmed" if he had to switch schools. Tr. p. 32. The GAL explained that Child had always attended school in Crown Point, he was doing well and had friends there, he had "positive things" to say about school there, Crown Point schools are "higher rated" than Griffith schools, and the only reason to switch him to Griffith would be because "it's more convenient for [M]other." *Id.* at 36. The GAL explained that Child, who needed counseling, was "at a breaking point." *Id.* at 49. She didn't know what would be "the proverbial straw that breaks the camel's back," but she was "afraid for his mental health" and didn't want "additional stressors," which included changing schools, on him. *Id.* The GAL acknowledged that her investigation wasn't complete as Child had not started counseling with Dr. Helma and the parties had not completed their psychological evaluations. However, the GAL said that what was going on was a "circus" and that Child needed out of it. *Id.* at 52. Mother testified that she intended to stay in Griffith (which was about twenty-five minutes from Child's school in Crown Point), that she had family nearby, that Child had friends and played sports there, and that she didn't believe Child would be negatively affected by switching schools.

[8] The next day, August 2, the trial court issued a preliminary injunction under Indiana Trial Rule 65(A) requiring Mother and Father to "maintain and

continue [Child's] registration at Solon Robinson Elementary School or other applicable schools within the Crown Point Community School Corporation." Appellant's App. Vol. II p. 40. Mother requested a stay of the preliminary injunction, but the trial court denied the request.

Mother now brings this interlocutory appeal of the trial court's grant of the preliminary injunction under Indiana Appellate Rule 14(A)(5). A final hearing on all pending matters is currently scheduled in the trial court for the week of December 16, 2024.[2]

## Discussion and Decision

Mother contends the trial court erred in issuing the preliminary injunction. The purpose of a preliminary injunction is to preserve the status quo pending an adjudication on the merits. *Holcomb v. T.L.*, 175 N.E.3d 1177, 1180 (Ind. Ct. App. 2021). To obtain a preliminary injunction, the movant must show by a preponderance of the evidence that: (1) the movant has a reasonable likelihood of success on the merits at trial; (2) the remedies at law are inadequate and irreparable harm will occur while the case is pending; (3) the threatened injury to the movant from denying the injunction outweighs the potential harm to the nonmovant from granting the injunction; and (4) the public interest would not

---

[2] On November 8, Mother moved to continue the December 16 final hearing because Child had only recently started counseling, the parties still had not undergone their psychological evaluations, and "it is necessary for the Indiana Court of Appeals to render an opinion on the pending appeal, to provide the parties with guidance." Cause No. 45D03-1509-JP-1162 (Nov. 8, 2024). On November 12, the trial court issued an order that the continuance would be addressed at the November 22 final pretrial conference.

be disserved by granting the injunction. *Thind v. Delaware Cnty.*, 207 N.E.3d 434, 439 (Ind. Ct. App. 2023); *Vickery v. Ardagh Glass Inc.*, 85 N.E.3d 852, 859-60 (Ind. Ct. App. 2017), *reh'g denied*, *trans. denied*. Appellate review of a preliminary injunction is "limited and deferential." *State v. Econ. Freedom Fund*, 959 N.E.2d 794, 801 (Ind. 2011), *reh'g denied*. A trial court has discretion to enter a preliminary injunction and will be reversed only upon an abuse of that discretion. *Id.* at 799-800.

[11]   Mother claims that Father failed to prove three of the four requirements for a preliminary injunction. *See* Appellant's Reply Br. p. 12. First, Mother argues that Father failed to establish a reasonable likelihood of success on the merits. The record shows that Father asked the trial court to modify the provision of the 2017 agreed order that provides, "Mother's residence shall be designated as [Child's] primary residence for school purposes." Indiana Code section 31-14-13-6 provides that a trial court may not modify a child-custody order unless (1) the modification is in the best interests of the child and (2) there has been a substantial change in one or more of the statutory factors that the court may consider under Section 31-14-13-2. These factors include:

> (1) The age and sex of the child.

> (2) The wishes of the child's parents.

> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

>    (A) the child's parents;

>    (B) the child's siblings; and

>    (C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

Ind. Code § 31-14-13-2.

[12]    The trial court found that Father had established a reasonable likelihood of success that a substantial change in circumstances had occurred:

>    Father has established at least a reasonable likelihood of success on the merits by establishing a prima facie case that a substantial change in circumstances has occurred since the February 1, 2017 agreement was adopted as an order of the Court:

>>    a. Resulting from Mother's relocation to Griffith that would otherwise result in [Child] changing schools;

>>    b. In a deterioration of the interactions and interrelationship between Mother and Father in light of the

rapid and extraordinarily litigious approach by both parties in this case; and

c. [Child's] mental health has significantly deteriorated with specific relation to the deterioration of the parties' interactions and interrelationship as well as the potential for a change of schools.

Appellant's App. Vol. II p. 39. The court also found a reasonable likelihood of success that "modifying the school placement provision [in] the February 1, 2017 order would be in [Child's] best interest." *Id.*

[13] Mother, however, argues that the school-designation provision in the 2017 agreed order is "not subject to modification" because it was specifically "negotiated and agreed upon" by the parties. Appellant's Reply Br. p. 7. Mother thus claims that Father is "estopped" from seeking modification of this provision. Appellant's Br. p. 25. In support, Mother cites several cases, including *DeBoer v. DeBoer*, 669 N.E.2d 415 (Ind. Ct. App. 1996), *trans. denied*, and *Reno v. Haler*, 734 N.E.2d 1095, 1099 (Ind. Ct. App. 2000), *adhered to on reh'g,* 743 N.E.2d 1139 (Ind. Ct. App. 2001), *trans. denied*. But as Father points out, these cases are readily distinguishable because they do not involve petitions to modify custody.

[14] In *DeBoer*, a husband and wife divorced and entered an agreement that the husband would pay the wife $2,000 per month in alimony until November 3, 2004, and that "said alimony is not subject to modification." 669 N.E.2d at 419. Husband later sought to modify the alimony provision. On appeal, this Court

held that a trial court "may not modify a spousal maintenance agreement which states unambiguously that it cannot be modified." *Id.* at 421 (quotation omitted).

[15] In *Reno*, a husband filed for divorce from his wife. During mediation, the parties attempted to settle issues, including child custody. The parties signed the mediator's handwritten notes, which said "joint custody." *Reno*, 734 N.E.2d at 1097. Before signing, the mediator explained the terms of the agreement to the parties and their attorneys. The mediator later typed a detailed copy of what the parties had agreed to (joint legal custody with the wife having physical custody during the school year and the husband having physical custody during the summer). The wife, however, refused to sign the typed agreement. The mediator filed the report and typed agreement with the trial court, which accepted it. The wife filed a motion to repudiate the agreement, which the court denied.

[16] On appeal, the wife argued that the trial court erred in accepting the mediator's report and typed agreement because she had timely repudiated it. This Court held that "although the trial court was not bound to accept the custody provisions of the settlement agreement, Wife was bound by the terms to which she had agreed in the signed notes and was not permitted to repudiate them prior to the trial court's approval merely because she had changed her mind." *Id.* at 1101.

[17]　None of the cases Mother cites involve petitions to modify custody and thus do not control here. Child custody is always subject to modification, as children are not property and things can change drastically. We therefore affirm the trial court's determination that Father has established a reasonable likelihood of success on the merits.[3]

[18]　Second, Mother argues that Father failed to prove that the threatened injury from denying the injunction outweighed the potential harm from granting the injunction. The trial court made the following findings about the threatened injury to Child:

> 43. The Guardian ad Litem opined a decision needs to be made one way or the other regarding which school [Child] should attend as he is suffering an extraordinary amount of stress due to the parties' dispute over where he will go to school.
>
> 44. [Child] is exhibiting a strained mental state as a result of, among other things, the recent and extraordinarily personal and aggressive level of conflict between the parties and his inability to 'please' both parents.
>
> 45. A change in schools is a traumatic event for children generally.

---

[3] Mother notes that a delay "in the final outcome in these proceedings would severely prejudice [her]." Appellant's Br. p. 26. But as Father responds, the parties continue to share custody of Child, and there is "only a little over four-month period between the granting of the preliminary injunction and the scheduled [December 16, 2024] final hearing on the school issue," which is before the start of second semester. Appellee's Br. p. 23.

46. [Child's] current strained mental state would not tolerate the impact of a change in school in a manner that most other children of a similar age would be able to.

47. There is a non *de minim[i]s* concern that the additional stress of changing schools will be the "straw that breaks the camel's back" to [Child's] emotional well-being.

Appellant's App. Vol. II p. 35. As for the potential harm to Mother, the court found that Mother wanted Child to attend Griffith schools "largely for reasons that are convenient to her or are otherwise in her best interest." *Id.* at 34.

[19] Mother acknowledges the GAL's testimony but points out that her investigation was incomplete when she testified as Child had not started counseling with Dr. Helma and the parties had not completed their psychological evaluations.[4] As such, she claims that the trial court should have given more weight to her testimony that it was in Child's best interests to switch schools. But as Father points out, this is merely a request for us to reweigh the testimony. If things have changed since August, then the parties can present that evidence at the final hearing. We therefore affirm the trial court's determination that Father has proved that "the threatened harm to [Child's]

---

[4] Mother doesn't mention specific findings in her opening brief. In her reply brief, she appears to argue that several specific findings aren't supported by the evidence. A party cannot raise new issues in a reply brief. *See Moriarty v. Moriarty*, 150 N.E.3d 616, 626 n.3 (Ind. Ct. App. 2020), *trans. denied*.

mental health outweighed the potential harm the injunction requested would pose to Mother[.]" *Id.* at 36.

[20] Finally, Mother argues that Father failed to prove that the public interest would not be disserved by granting the injunction. Citing *DeBoer*, Mother claims that granting the injunction disserves the public interest in allowing parties "to negotiate provisions in agreed orders." Appellant's Reply Br. p. 10. But as explained above, custody provisions can be modified so long as the requirements of Section 31-14-13-6 are met. We therefore affirm the trial court's grant of the preliminary injunction.

[21] Affirmed.

Altice, C.J., concurs.

Crone, Sr. J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT

George P. Galanos
Crown Point, Indiana

Joseph Ichiro Miyake
Miyake Law LLC
Highland, Indiana


ATTORNEY FOR APPELLEE

Benjamen W. Murphy
Law Office of Ben Murphy
Griffith, Indiana

**Crone, Senior Judge, dissenting.**

[22] The reason that agreements are encouraged and respected in the domestic area is that they reduce the number of issues subject to future litigation. Here, Father and Mother unequivocally agreed that "Mother's residence shall be designated as [Child's] primary residence for school purposes." Appellant's App. Vol. 2 at 61. Father has never asserted that this provision is unreasonable, and it does not prohibit Mother from changing residences. After Mother moved the relatively short distance from Crown Point to Griffith in January 2024, Father tried to back out of this part of the agreement. This resulted in a flurry of litigation, as well as conflict that negatively affected Child's mental health, that the agreement was designed to prevent.

[23] By issuing the preliminary injunction, the trial court acted contrary to the significant public interest in enforcing agreed orders in domestic cases. And by affirming the trial court, the majority has essentially held that agreed orders are subject to revision if the parties are sufficiently disruptive. I cannot countenance this result, and therefore I dissent.