## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 14 2016, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael F. Vertesch
Greenwood, Indiana

ATTORNEY FOR APPELLEE

Shana D. Tesnar
Adler Tesnar & Whalin
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Julie D. Himes,

*Appellant/Petitioner,*

v.

Todd A. Himes,

*Appellee/Respondent.*

June 14, 2016

Court of Appeals Case No.
16A01-1510-DR-1599

Appeal from the Decatur Circuit Court

The Honorable Brian D. Hill, Special Judge

Trial Court Cause No.
16C01-9609-DR-206

**Pyle, Judge.**

# Statement of the Case

[1] In this contentious post-secondary educational expense action, Julie Himes ("Mother") argues that the trial court abused its discretion by: (1) granting the parties' children, twenty-two-year-old Maggie ("Maggie") and twenty-year-old Bryant ("Bryant") leave to intervene as parties; (2) granting the children the exclusive right to pursue any arrearage; (3) terminating the educational expenses order; (4) concluding that Mother's overpaid college expenses were gifts; (5) failing to find Todd Himes ("Father") in contempt; and (6) failing to award her attorney fees. The trial court did not err in granting the children the exclusive right to pursue any arrearage and in concluding that Mother's overpaid college expenses were gifts. However, because the trial court abused its discretion in all other aspects of the case, we affirm in part, reverse in part, and remand with instructions for the trial court to determine the amount of attorney fees Mother is to receive as compensation for her injuries incurred as a result of Father's contempt. In addition, the sanction for contempt may exceed any award for attorney fees.

[2] We affirm in part, reverse in part, and remand with instructions.

# Issues

1. Whether the trial court abused its discretion in granting the parties' adult children leave to intervene as parties.

2. Whether the trial court erred in granting the children the exclusive right to pursue any arrearage.

3.  Whether the trial court abused its discretion in terminating the educational expenses order.

4.  Whether the trial court abused its discretion in concluding that Mother's overpaid college expenses were gifts.

5.  Whether the trial court abused its discretion in failing to find Father in contempt.

6.  Whether the trial court abused its discretion in failing to award Mother attorney fees.

# Facts

Mother and Father have two children, daughter Maggie who was born in August 1992 and son Bryant who was born in December 1994. Mother and Father's marriage was dissolved in February 1997; however, they have apparently spent years litigating issues regarding their children. In January 2014, Mother and Father entered into the following Mediated Agreement to resolve pending issues:

> 1.    Child support for both Maggie Himes . . . and Bryant Himes . . . shall terminate on November 20, 2013. . . .
>
>       \*      \*      \*      \*      \*
>
> 4.    As of November 20, 2013, all child support owed has been paid in full and there are no overpayments.
>
> 5.    As of November 20, 2013, there are no child-related uninsured medical, dental or any other medical related expenses due or overpayments by either party; and both parties stipulate that neither party was in contempt of any Court Order.
>
> 6.    As of the end of the summer semester of 2013, all Court-Ordered payments for post-secondary education expenses for

Maggie have been paid by all parties and there are no overpayments.

*　　*　　*　　*　　*

8.　　The new post-secondary education expense order [has been] calculated . . . .　Maggie shall contribute the sum of Thirteen Thousand Five Hundred Fifty One Dollars ($13,551.00) per school year in grants, cash and student loans as her share of her yearly post-secondary education expenses.　Bryant shall contribute the sum of Fifteen Thousand Four Hundred Ninety Five Dollars ($15,495.00) per school year in grants, cash and student loans as his share of his yearly post-secondary education expenses.

9.　　Commencing July 22, 2013, in the event that Maggie Himes earns a 2.5 or better semester g.p.a. (out of a 4.00 scale), at the previous Fall or Spring semester's conclusion, Father shall pay to Indiana University the sum of Five Thousand Three Hundred Dollars ($5,300.00) per semester on behalf of Maggie's account as a reimbursement for his share of Maggie's post-secondary education expenses in the previous Fall or Spring semester.　Mother's share shall be One Thousand Seven Hundred Seventy Three Dollars ($1,773.00) . . . .

In the event that Maggie attends Summer semester classes and Maggie earns a 2.50 or better semester g.p.a. (out of a 4.0 scale) at the conclusion of Summer semester, Father shall pay Seventy Five Percent (75%) of any of Maggie's Summer semester tuition, books and fees and Mother shall pay Twenty Five Percent (25%) of such expenses.

10.　　Commencing July 22, 2013, in the event Bryant Himes earns a 2.50 or better semester g.p.a. (out of a 4.0 scale), at the previous Fall or Spring semester's conclusion, Father shall pay to Cincinnati University the sum of Six Thousand Two Hundred Dollars ($6,200.00) per semester on behalf of Bryant's account as a reimbursement for his share of Bryant's post-secondary

education expenses in the previous Fall or Spring semester. Under those same conditions, Mother's share shall be Two Thousand Fifty Dollars ($2,050.00) per semester . . . .

11.    In the event that Bryant attends Summer semester classes and Bryant earns a 2.50 or greater g.p.a. (out of a 4.00 scale), at the conclusion of Summer semester, Father shall pay Seventy Five Percent (75%) of any of Bryant's Summer semester tuition, books, fees, room and board and any other living expenses and Mother shall pay Twenty Five Percent (25%) of such expenses.

12.    All post-secondary education payments owed by Father shall be made within ten (10) days of written confirmation from the child that the child's past semester grades were a 2.50 or better semester g.p.a. (out of a 4.00 scale).  In the event that either university will not apply all or part of Father's payment to the child's bursar account, the money shall be paid directly to the child.

\*        \*        \*        \*        \*

18.    This Mediated Agreement was reached and signed during a Court-Ordered mediation session and *both parties acknowledge that they enter this Mediation Agreement knowing that once signed, they have no right to revoke their signature or the effectiveness of this Mediated Agreement.*

(App. 13-16) (emphasis added).

[4]    In July 2014, Mother filed a petition for contempt, which she has failed to include in her appendix.  Apparently, Mother claimed that Father had failed to pay the children's post-secondary expenses as previously agreed and ordered pursuant to the Mediated Agreement.  Following a hearing on Mother's petition, the trial court concluded in an October 30, 2014 order ("Contempt

Order") that Father had not paid his children's post-secondary school expenses. Specifically, the trial court concluded in relevant part as follows:

(6) It is the Court's finding that based upon the evidence presented, Todd A. Himes has not complied with the Mediated Agreement dated January 7, 2014 with respect to his obligation to pay college expenses for Maggie Himes for the fall 2013 and spring 2014 semesters and his obligation to pay college expenses for Bryant Himes['] college education for the fall 2013 and spring 2014 semesters. Todd A. Himes is obligated to comply specifically with the order and pay the total sum of Ten Thousand Six Hundred Dollars ($10,600.00) to the college which Maggie Himes attended for the fall 2013 semester and the spring 2014 semester. In the event the college refuses such payment, then the payment shall be paid directly to Maggie Himes as ordered in the mediated agreement dated January 7, 2014. The Court will not accept evidence of payment testimony from Todd A. Himes that he paid cash directly to the child. He must pay the funds in a check or certified funds in order to receive credit for the payment due to his efforts to avoid payment by alleging he paid cash previously. Said payment shall be paid in full within sixty (60) days from the date thereof.

(7) Todd A. Himes is also indebted in the sum of Twelve Thousand Four Hundred Dollars ($12,400.00) for college expenses owed for Bryant Himes['] college education for the fall 2013 and spring 2014 semesters. Todd A. Himes shall pay said sum directly to the college attended by Bryant Himes during the fall 2013 and the spring 2014 semester. In the event the college refuses payment, he shall pay said amount directly to Bryant Himes as called for in the Mediated Agreement dated January 7, 2014. The Court will not accept as evidence of payment testimony from Todd A. Himes that he paid cash directly to satisfy the obligation. He must satisfy the obligation by payment of check or certified funds. Said payment shall be paid in full within sixty (60) days from the date hereof.

(8) The Court finds that Todd A. Himes has made deliberate efforts to avoid payment of his share of college expenses as he agreed to and as he has been ordered to pay in the Court's Mediated Agreement dated January 7, 2014. As a result, the Court finds Todd A. Himes in contempt of the Court's order dated January 7, 2014. He shall be obligated to reimburse Julie D. Himes the sum of One Thousand Five Hundred Dollars ($1,500.00) in attorney fees incurred in bringing the contempt action before the court.

* * * * *

(10) The Court does not find Todd A. Himes in contempt for failure to pay summer 2014 expenses since those expenses are based on a percentage basis and he needs access to the children's Bursar accounts to determine the dollar amount owed. The Court instructed Julie D. Himes to provide Todd A. Himes access to the children's Bursar accounts and/or have the children provide him access to the Bursar accounts. On providing that access, Todd A. Himes owes seventy-five percent of each child's summer 2014 college expenses as previously ordered.

(App. 25-27).

[5] In January 2015, more than sixty days after the trial court's order, Father filed a petition to modify wherein he asked the trial court to grant "Maggie and Bryant leave to intervene as parties hereto and to thereafter terminate all Orders relating to educational expenses." (App. 37). The petition further stated that Maggie and Bryant joined in and certified that "they ha[d] a good working relationship with their Father and no longer need[ed] or desired any intervention in their relationship with their Father . . . ." (App. 38). Father and

both children signed the petition under penalties of perjury. Mother responded with an objection and a petition for contempt, which she failed to include in her appendix. In February 2015, Father filed a motion for change of venue from the judge, which resulted in the appointment of a special judge.

[6] In March 2015, Father renewed his motion to terminate all support orders and to close the case. The trial court held a July 2015 hearing on Father's petition to terminate the educational support order as well as Mother's petition for contempt. The evidence revealed that Father had directly paid Maggie $1,795.00 of the $10,600.00 that the trial court ordered him to contribute to her fall 2013 and spring 2014 semesters, leaving an arrearage of $8,805.00. Father had also accrued a $1,892.27 arrearage for Maggie's summer 2014 semester. Father's total arrearage for Maggie was $10,697.27. In addition, Father had directly paid Bryant $880.00 of the $12,400.00 that the trial court ordered him to contribute to his son's fall 2013 and spring 2014 semesters, leaving an arrearage of $11,520.00. Father's total arrearage for the fall 2013, spring 2014, and summer 2016 semesters for both children was $22,217.27.

[7] Father testified that he had not complied with the Contempt Order contending that it was unclear. Father explained that the order "didn't really specify that I was supposed to do anything other than pay money and continue to help my kids . . . [which] I've been doing." (Tr. 15-16). When confronted by Mother's counsel, Father conceded that the order was not confusing. Instead, he explained that based on his counsel's advice, he believed that his approximately $2,700.00 in payments had satisfied the almost $25,000.00 due pursuant to the

Contempt Order. Specifically, he explained that he "had made payments, working with [his] kids as needed, to help with school, and personal expenses during school," including rent and car repairs. (Tr. 9). Father further explained that he "[did not] need a court order to help [his kids]." (Tr. 10). When asked by Mother's counsel if he owed money for Maggie's educational expenses, Father responded that he did not believe that he did. Father explained, "I've been paying and . . . I've made payments to her and will continue to do so." (Tr. 26). Father also testified that he had "paid everything [Bryant] asked for and more." (Tr. 8). Father further testified that Maggie's account had been overpaid and she had received a refund from the Bursar's Office. In addition, she had finished the classroom portion of her college education and would graduate as soon as she had finished her internship in September 2015. Bryant was participating in a co-op engineering program that was part of his degree at the University of Cincinnati, and he was earning approximately $20,000 in the program. Lastly, Father testified that his annual income was approximately $110,000.

[8] Although Mother acknowledged that Maggie had no more classes to attend or tuition due as of the date of the hearing, she pointed out that Maggie had $40,000 in student loans. She also pointed out that although Bryant was currently participating in a co-op program, he had two years of college to complete. Mother also testified that she had overpaid the educational expense order for Maggie by $92.63 and for Bryant by $7,109.25. Mother asked the trial court to enter a judgment in her name and to garnish Father's wages. She

requested reimbursement for her overpayments, but she asked the trial court to allow her to apply her overpayments to her future obligations. Last, Mother testified that her annual income was $38,000 and asked the trial court to award her attorney fees.

[9] Although the children were subpoenaed, they did not appear in court or testify. The trial court sustained Mother's objection to the admission of the children's depositions into evidence.

[10] In August 2015, the trial court issued an order that provides in relevant part as follows:

> 1. Due to the fact that this Court has previously made the adult children "third party" payees of funds to be made by Father, the Court grants their motion to intervene as parties in this matter. The Court finds, that on two occasions, both adult children have affirmed under the penalties of perjury their wish to have the previous education expense order terminated and that they have a good working relationship with their Father and are able to work out any of their educational needs with him. There was no evidence that these signatures were forged or made under duress.
>
> 2. The Court finds that the previous Order of Educational Expenses should be and is hereby terminated effective January 26, 2015. The Court, however, does not vacate any previous order of expense allocation or specific amounts owed by Father. These amounts still may be owed by Father to children, and as parties, one or both may request that said expenses be reduced to judgment and/or proceed with collection measures under this cause.

3.     By her own testimony, Wife is not requesting reimbursement for any alleged overpayment of educational expenses that she has made.  The Court finds that any potential overpayment should be considered a gift since the Court did not order Former Husband to reimburse Former Wife or make any future payments to her, she is not the appropriate party to enforce payment to payees who apparently have no interest in pursuing their claims at this time.

4.     Former Wife has presented sufficient evidence to show that Former Husband has not been in strict compliance with the previous order of this Court requiring payments made to the individual children by certified check or money order, however, under the specific facts of this case, the Court finds that it would be manifestly unreasonable to find Former Husband in contempt for his actions due to the fact that payees have joined in his motion to terminate the Court order of educational expense allocation.

5.     Therefore, Former Wife's Petition for Contempt should be and is hereby denied along with her request for attorney fees.

(Mother's Br. 33-34).  Mother appeals.

# Decision

## 1.     Granting Children Leave to Intervene as Parties

Mother first argues that the trial court erred in granting Maggie and Bryant leave to intervene as parties.  We review the trial court's ruling on a motion to intervene pursuant to Indiana Trial Rule 24 for an abuse of discretion and assume that all facts alleged in the motion are true.  *Citimortgage v. Barabas*, 975 N.E.2d 805, 812 (Ind. 2012).  A motion to intervene must be timely filed.

*White v. Vermillion County Bd. of Zoning Appeals*, 568 N.E.2d 1106, 1107 (Ind. Ct. App. 1991).

[12] Indiana Trial Rule 24(C) provides that a "person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and set forth or include by reference the claim, defense or matter for which intervention is sought." Here, the children did not comply with this rule. Specifically, they failed to file or serve their own motion to intervene. Rather, Father's petition to modify includes a brief request that the trial court grant Maggie and Bryant leave to intervene.

[13] Maggie and Bryant also failed to comply with Trial Rule 3.1(C) which provides that at the time the "matter is submitted to the court seeking to intervene in a proceeding, the attorney representing the intervening party or parties, or the intervening party or parties, if not represented by an attorney, shall file an appearance form . . . ." No appearance forms were filed.

[14] Further, neither child appeared in court even though they had twice been subpoenaed by Father's counsel. Under these circumstances, where the children failed to comply with the trial rules governing intervention and then failed to appear in court despite a subpoena, the trial court erred in granting them leave to intervene as parties.

### 2.    Exclusive Right to Pursue any Arrearage

Mother also argues that the trial court abused its discretion in awarding Maggie and Bryant the exclusive right to pursue any arrearage. Our review of the

record reveals that the trial court awarded the children the exclusive right to pursue any arrearage because they were already third-party payees of funds paid by Father. The children's status as payees was reconfirmed in the trial court's Contempt Order. Mother cannot now complain about the children's status as payees where she agreed to this status in the January 2014 Mediated Agreement. Agreements such as this will be upheld absent evidence of unfairness, unreasonableness, or manifest inequity, or evidence that the agreement was procured through fraud or coercion, none of which has been alleged by Mother. *See Reno v. Haler*, 734 N.E.2d 1095, 1101 (Ind. Ct. App. 2000) *trans. denied*. The trial court did not abuse its discretion in determining that those who had the exclusive right to be paid the money should also have the exclusive right to collect any arrearage.

### 3. Termination of Educational Expenses Order

[15] Mother next argues that the trial court abused its discretion in terminating the educational expenses order. Educational expenses are in the nature of child support. *Schacht v. Schacht*, 892 N.E.2d 1271, 1275 (Ind. Ct. App. 2008). An agreement between parents regarding child support may subsequently be modified. *In re Marriage of Kraft*, 868 N.E.2d 1181, 1188 (Ind. Ct. App. 2007). A modification of child support in such cases is governed by INDIANA CODE § 31-16-8-1, which provides that a child support order may be modified or revoked upon a showing of changed circumstances so substantial and continuing as to make the terms of the order unreasonable. *See id.* When confronted with a petition to modify a support order, the trial court must

consider the totality of the circumstances involved in order to ascertain whether the modification was warranted. *Carter v. Dayhuff*, 829 N.E.2d 560 (Ind. Ct. App. 2005). As the party seeking modification, Father had the burden of establishing that he was entitled to have the educational expenses order modified. *See Cross v. Cross*, 891 N.E.2d 635, 641 (Ind. Ct. App. 2008).

[16] Modifications of child support are reviewed for an abuse of discretion. *Miller v. Carpenter*, 965 N.E.2d 104, 108 (Ind. Ct. App. 2012). We grant latitude and deference to trial courts in family matters. *Id.* We neither we neither reweigh the evidence nor reassess witness credibility. *Id.* Rather, we consider only the evidence most favorable to the judgment and the inferences flowing therefrom. *Id.*

[17] Here, the trial court terminated the educational expenses order effective January 25, 2015. Mother argues that "there was no evidence introduced at trial of this matter to support a finding of changed circumstances so substantial and continuing as to make the terms unreasonable . . . ." (Mother's Br. 20). We agree.

[18] Mother and Father entered into a Mediated Agreement for the payment of their children's educational expenses in January 2014. The trial court's order being appealed in this case terminated those educational expenses in January 2015. However, our review of the evidence reveals that the children's educational expenses had not substantially changed as of January 2015. Specifically, Maggie and Bryant were both still students at their respective universities.

Bryant participated in an engineering co-op program and earned $20,000.00 that year, which provided him with the funds to make his required $15,000.00 contribution to his educational expenses. However, this was not a changed circumstance so substantial and continuing as to make Father's agreed contribution unreasonable.

[19] Further, to the extent that Father argues that Maggie's refund from the Bursar's Office was a substantial and continuing change of circumstances, we note that tuition payments are due at the beginning of the semester. Father is required to contribute to his children's educational expenses at the end of the semester if the children achieve a certain G.P.A. Under these circumstances, it is reasonable to infer that Maggie borrowed money to pay her tuition at the beginning of the semester, and when Father went to the Bursar's Office to pay Maggie's tuition at the end of the semester, there was nothing due. Thus, although Maggie's loan helped her to make her $13,551.00 required contribution to her educational expenses, it was not a changed circumstance as substantial and continuing as to make Father's agreed contribution unreasonable.

[20] Father has pointed to no additional evidence to show the required substantial and continuing changed circumstances, and we find none. Father has therefore

failed to meet his burden. Under these circumstances, the trial court abused its discretion in terminating the educational expenses order.[1]

## 4. Mother's Overpaid Educational Expenses

[21] Mother also argues that the trial court abused its discretion in finding that any educational expenses that she overpaid were gifts. She has waived appellate review of this issue because she has failed to support it with cogent argument and relevant authority. *See Kentucky Nat'l. Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 598 (Ind. Ct. App. 2010) (holding that argument was waived for failure to cite authority or provided cogent argument).

[22] Waiver notwithstanding, we find no error. Where Mother did not request reimbursement of the overpayments, the trial court did not abuse its discretion in finding that they were gifts. *See Carpenter v. Carpenter*, 891 N.E.2d 587, 591 (Ind. Ct. App. 2008) (holding that voluntary overpayments of child support are properly treated as gratuities to the children).

## 5. Contempt

---

[1] Indiana's policy is to encourage parents to settle their own affairs. *Reno v. Haler,* 734 N.E.2d 1095, 1100 (Ind. Ct. App. 2000), *trans. denied.* We have previously pointed out that a child support order and an educational support order are separate and distinct because an educational support order can be terminated if a child repudiates a parent. *Lovold v. Ellis*, 998 N.E.2d 1144, 1152 (Ind. Ct. App. 2013). We do not have that here. What we do have here are two parents that properly executed a mediated agreement, which stated that they both gave up any "right to revoke their signature or the effectiveness of this Mediated Agreement." (App. 16). There is no evidence in the record of fraud, duress, misrepresentation, or manifest inequities. *See Pond v. Pond*, 700 N.E.2d 1130, 1136 (Ind. 1998). As a result, even if there was evidence to support a modification, it is likely that the trial court would still have been bound to enforce the terms of the parties' Mediated Agreement. However, we do not reach that conclusion today.

[23] Mother next argues that the trial court abused its discretion in failing to find Father in contempt for failing to comply with the Contempt Order. Whether a party is in contempt is a matter left to the sound discretion of the trial court. *Sutton v. Sutton*, 773 N.E.2d 289, 297 (Ind. Ct. App. 2002). We reverse the trial court's finding in contempt matters only if it is against the logic and effect of the evidence before the trial court or is contrary to law. *Id.* When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* We will affirm the trial court's judgment unless a review of the entire record leaves us with a firm and definite belief that a mistake has been made. *Id.*

[24] To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with "willful disobedience." *Id.* Simply establishing the existence and knowledge of an arrearage may not amount to a "willful disregard of a court order." *Id.*

[25] Here, our review of the evidence reveals that the Contempt Order found Father in contempt for making "deliberate efforts to avoid payments of his share of college expenses agreed to and as he ha[d] been ordered to pay in the Courts' Mediated Agreement dated Jan. 7, 2014." (App. 24). The trial court ordered Father to make the payments in full within sixty days of the date of the order. However, almost a year later, Father, who had still not complied with this order, testified that the order was not clear because it did not tell him what to do. Later, he admitted that the order was clear and testified that he "[did not] need a court order to help his kids." (Tr. 10). According to Father, he believed

that his payments of almost $2,700.00 had satisfied his $25,000.00 court-ordered contribution to his children's educational expenses. Father's failure to pay was clearly willfully deliberate. Because a review of the entire record leaves us with a firm and definite belief that a mistake has been made, we conclude that the trial court abused its discretion in failing to find Father in contempt.

### 6. Attorney Fees

Last, Mother argues that the trial court abused its discretion in failing to order Father to pay her attorney fees. The determination of the payment of attorney fees in proceedings to modify a child support award is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion. *Id.*

Mother first contends that the trial court abused its discretion in failing to award her attorney fees pursuant to INDIANA CODE § 31-16-11-1, which authorizes the award of attorney fees in post-dissolution proceedings. In assessing attorney fees, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award. *Gilbert v. Gilbert*, 777 N.E.2d 785, 795 (Ind. Ct. App. 2002). In addition, any misconduct on the part of one of the parties that directly results in the other party incurring additional fees may be taken into consideration. *Id.* Mother complains that the trial court in this case failed to consider Father's superior financial situation and how he had "thwarted equal access to the courts for others in the difficult economic position such as that occupied by Mother." (Mother's Br. 31). However, the trial court reviewed the

parties' economic circumstances at the hearing. We assume the trial court considered such information and determined that it did not mandate the award of attorney fees in this case. *See id.* (explaining that the trial court need not give reasons for its determination). We find no abuse of the trial court's discretion.

[28] Mother also contends that the trial court abused its discretion in failing to award her attorney fees as a sanction upon a finding of contempt. *See Adler v. Adler*, 713 N.E.2d 348, 355 (Ind. Ct. App. 1999) (explaining that the trial court has inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions). Because the trial court did not find Father to be in contempt, the court did not consider ordering him to pay Mother's attorney fees as a sanction. However, because we have found that the trial court erred in failing to find Father to be in contempt, we remand this case to the trial court with instructions to determine the amount of attorney fees Mother is to receive as compensation her for injuries incurred as a result of Father's contempt. In addition, the sanction for contempt may exceed any award for attorney fees.

[29] Affirmed in part, reversed in part, and remanded with instructions.

Baker, J., and Bradford, J., concur.