## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2018, 5:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Benjamin L. Niehoff
Kristin L. Garner
Slotegraaf Niehoff, P.C.
Bloomington, Indiana

ATTORNEY FOR APPELLEE

Kendra G. Gjerdingen
Mallor Grodner LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Samuel K. Frank,

*Appellant-Respondent,*

v.

Kathleen M. Frank,

*Appellee-Petitioner*

March 28, 2018

Court of Appeals Case No.
53A01-1707-DR-1587

Appeal from the Monroe Circuit Court

The Honorable Valeri Haughton, Judge

Trial Court Cause No.
53C08-1605-DR-245

**Vaidik, Chief Judge.**

# Case Summary

Samuel Frank ("Father") appeals the trial court's modification of the educational-expense order for his two youngest children and the court's conclusion that Kathleen Frank ("Mother") was not in contempt for failing to pay for pre-college expenses. He contends that there was not a substantial and continuing change in circumstances that made the prior order unreasonable. We affirm the trial court's conclusion that there was a substantial and continuing change in circumstances that made the prior order unreasonable and that Mother was not in contempt. However, we conclude that two of the modifications the court made were erroneous: one was inconsistent with our case law and the other was premature. Accordingly, we affirm in part, reverse in part, and remand.

# Facts and Procedural History

Mother and Father were married in September 1996 and had three children during their marriage: P.F., G.F., and M.F. Mother petitioned for divorce in May 2016. Five months later, the parents reached a settlement through mediation. At the time, P.F. was a freshman at Trinity College in Dublin, Ireland; G.F. was a high-school freshman at Culver Academies; and M.F. was in fifth grade at a public elementary school in Bloomington. It was agreed that Mother would have primary physical custody of G.F. and M.F. and the parents would share legal custody. Father made approximately $109,000 per year, and

Mother made approximately $130,000 per year, and Father's weekly child-support obligation was $26.

[3] As part of the mediated agreement, Mother and Father agreed that G.F. would continue to attend Culver through twelfth grade and that M.F. would also attend Culver for high school. If M.F. was not admitted to Culver, she would attend an equivalent private school. Mother and Father agreed to pay 52% and 48%, respectively, for G.F.'s tuition for her last three years of high school. They agreed that Mother would be responsible for "all of the remaining expenses for [G.F.'s] freshman year." Appellant's App. Vol. II p. 27. The agreement does not state what this amount was. As for M.F., Mother and Father agreed to pay 52% and 48%, respectively, of her ninth-grade year at Culver, and Mother would be responsible for all costs of M.F.'s tenth, eleventh, and twelfth-grade years. It was also agreed that all three children would be responsible for one-third of their college expenses and that Mother and Father would pay 52% and 48%, respectively, of the remaining two-thirds (limited to the costs of attending an Indiana state-supported institution). *See id.*

[4] Regarding marital debts and assets, it was agreed that Mother would keep the marital residence and assume responsibility for all bills associated with it. Mother agreed that she would refinance the two mortgages on the home within 180 days, and if she was unable to refinance she would sell the home. Father was granted three rental properties and assumed responsibility for all bills associated with those properties. Mother was assigned approximately $271,000 of debt (including the two mortgages on the marital residence), and Father was

assigned approximately $368,500 of debt (including the three rental-property mortgages).

[5] The trial court approved the settlement agreement in October 2016. Six months later, Mother filed a notice of intent to relocate and a petition to modify the educational-expense order for G.F., who was a freshman in high school, and M.F., who was in fifth grade. She claimed that there had been a substantial and continuing change in circumstances that made the terms of the decree unreasonable. In particular, Mother alleged that she was having financial difficulties and could no longer afford to pay for G.F.'s tuition or M.F.'s anticipated tuition at Culver. Mother stated that she had to sell the marital residence and was planning on moving to Franklin, where housing costs are less than in Bloomington. As a result of the move, M.F. would be required to change schools. Father objected to any modification of the decree and asked the court to find Mother in contempt for the nonpayment of G.F.'s tuition at Culver and sought attorney's fees related to the contempt allegation. A hearing was held on the parents' filings.

[6] During the hearing, only Mother and Father testified. Mother testified as to her financial problems and admitted that she had not yet paid for G.F.'s tuition at Culver. She stated that she tried to refinance the mortgages on the house but that the bank began foreclosure proceedings. Because of this, she had to take out a hardship loan from her retirement account for approximately $18,000 to stop the foreclosure. Between the divorce and the modification hearing, Mother took out a total of $41,000 in loans from her retirement account to pay

her debt obligations. Mother stated that she was closing on the sale of the house immediately after the hearing was over and expected $112,208.50 in proceeds from the sale. That money would be used to pay off $107,818 of Mother's debt, including what Mother owed Culver for G.F.'s freshman-year expenses.

[7] Mother admitted that since the time of the decree, she had paid P.F.'s share of her tuition at Trinity. Mother explained that a week before P.F. left for Trinity, Mother and Father finalized the settlement agreement, and P.F. was now responsible for 1/3 of her college tuition (plus any additional costs that exceeded tuition of an Indiana state-supported school). P.F. did not have any money saved to pay for college. P.F. looked for work in Ireland but, as a foreigner, was unsuccessful. As a result, Mother paid the remaining tuition balance so that P.F. could remain at Trinity. Mother also admitted that she had paid a $1000 deposit to enroll M.F. in a fine-arts summer camp that cost $6200 to attend for four weeks.

[8] Regarding relocation, Mother stated that she had not been able to locate affordable housing in Bloomington and that housing was more affordable in Franklin, where she wanted to move. Mother had not yet secured a place to live in Franklin because she was waiting on the court to rule on her notice of intent.

[9] Because of her financial difficulties, Mother wanted G.F. to leave Culver and attend Roncalli, a Catholic high school on the south side of Indianapolis.

Tuition at Roncalli is approximately $9000 per year compared to Culver, which is nearly $50,000 per year. Mother prepared a budget of her income and expenses that showed she currently has a deficit of $2555 per month and that she would continue to live in debt if she had to pay 52% of G.F.'s Culver tuition. Ex. 3. Mother was also worried about G.F.'s recent grades and behavior at Culver. G.F. had earned Ds in the latest grading period and was at risk of failing math and science. G.F. had also started counseling to address academic and behavioral issues. Mother stated, "I've got concerns about her continuing [at Culver] just because of the change I've seen in her. Uh, she's a very different person than she was before." Tr. Vol. II p. 31.

[10] As to M.F., the parties' agreement called for M.F. to attend St. Charles in Bloomington for middle school, but Mother had several concerns about sending her there. M.F. had attended St. Charles for kindergarten and first grade but had struggled in reading. St. Charles did not have the resources to help M.F. catch up with her peers, but public school offered the necessary resources for its students. Mother and Father decided to enroll M.F. in public school and had her repeat first grade. M.F. has remained in a remedial reading program and has not passed her ISTEP test. M.F. also has severe anxiety about returning to St. Charles because she will not be in the same grade as her friends. Mother asked that M.F. be able to attend St. Rose in Franklin for middle school, and after middle school, M.F. would be "automatically accepted to Roncalli" for high school. Tr. Vol. II p. 64. Mother was worried that, if M.F. was accepted at Culver, she would not have the money to pay M.F.'s high-school tuition.

[11] Father, however, did not share Mother's concerns over sending M.F. back to St. Charles. He wanted M.F. to attend St. Charles for middle school because that is where P.F. and G.F. attended, and he wanted his children to have the same education experiences: "[I]t was important for me that [P.F.] and [G.F.] have that same experience of going to the same school and have that for the rest of their life going forward, and I really, I really would like to have that with [M.F.], too." *Id.* at 127.

[12] As for G.F.'s struggles at Culver, Father was not concerned about her grades or her behavioral issues. He attributed G.F.'s struggles to being a freshman and adjusting to life in high school and the demands Culver places on its students. He stated that P.F. had similar issues when she started at Culver and had also earned Ds in the same classes that G.F. was struggling in. Father reiterated that it was important to him that all three girls have similar educational experiences and attend the same schools.

[13] Regarding G.F.'s freshman-year expenses, Father asked the court to hold Mother in contempt for failing to pay the outstanding balance—$22,593.23. He stated that G.F. was ineligible to enroll for her sophomore year until Mother paid her portion of tuition. Father acknowledged that he and Mother had cash-flow issues in the past and that during the divorce proceedings they took a $42,000 loan from a joint-retirement account: $16,000 was paid to Trinity for P.F., $22,000 was paid to Culver for G.F., and $4000 was paid to a credit-card company. However, he stated that cash flow would not be an issue for him in the future because he had satisfied all his debts other than the mortgages on the

rental properties and paying back the $42,000 loan. Father settled his other debts because he inherited approximately $200,000 after the divorce. Because of the inheritance, Father could pay G.F.'s tuition in full and did not need Mother's assistance. However, he preferred to use the inheritance money to build up his retirement savings. Father conceded that Mother's inability to refinance the mortgage was a change in circumstances but argued that it was a positive change for her because she sold the house for $75,000 over the appraised value.

[14] Neither parent asked the trial court to enter findings of fact and conclusions, but, at the trial court's request, both Mother and Father submitted proposed orders. The trial court adopted Mother's proposal verbatim, which included findings of fact and conclusions.[1]

[15] The court held that Mother was permitted to relocate to Franklin with M.F., that Mother was not in contempt for failing to pay Culver for the remainder of G.F.'s freshman-year expenses until after the sale of her house and thus, Father's request for attorney's fees was denied, and that there had been a substantial and continuing change in circumstances with respect to pre-college

---

[1] When, as here, the trial court adopts one party's proposed order verbatim, "our confidence as an appellate court that the findings are the result of considered judgment by the trial court" is weakened. *Redd v. Redd*, 901 N.E.2d 545, 549 (Ind. Ct. App. 2009). Wholesale adoption of a proposed order is not prohibited, but we do not encourage the trial court to engage in this practice. *Id.*

expenses making the terms of the divorce decree unreasonable. The court made the following modifications to the divorce decree:

> a. If [G.F.] wants to continue to attend Culver, and Father also wants her to attend, Father shall be responsible for the entire cost. If Father does not agree to pay the entire cost for [G.F.] to attend Culver, [G.F.] shall attend Roncalli High School and the parties shall be responsible for the costs of her to attend pro rata.
>
> b. The parties shall share pro rata the cost of [M.F.] to attend St. Rose Catholic school through middle school and Roncalli High School. If [M.F.] wants to attend Culver, and Mother agrees, [M.F.] may attend Culver rather than Roncalli High School and Mother will be responsible for the entire cost for [M.F.] to attend Culver.

Appellant's App. Vol. II pp. 16-17.

[16]     Father now appeals.

# Discussion and Decision

[17]     Father raises multiple issues on appeal. First, he argues that the evidence is insufficient to support a conclusion that there was a change in circumstances so substantial and continuing as to make the prior educational-expense order unreasonable.[2] Father also claims that, even if there was a change in

---

[2] The divorce decree stated that M.F. would attend St. Charles in Bloomington for middle school. The court modified this provision, stating that M.F. would attend St. Rose in Franklin. Father did not challenge the portion of the court's order that allowed Mother to relocate to Franklin or the change in middle school for M.F. Accordingly, that portion of the modified order remains in effect.

circumstances that warranted modification, the court erred when it found that Mother was not responsible for paying any portion of G.F.'s tuition to Culver for her last three years of high school. Last, he contends that the trial court erred when it found that Mother was not in contempt for failing to pay the remaining expenses for G.F.'s freshman year and when it denied his request for attorney's fees.

# I. Changed Circumstances

"Provisions for the payment of educational expenses are modifiable because educational expenses are in the nature of child support." *Schacht v. Schacht*, 892 N.E.2d 1271, 1275 (Ind. Ct. App. 2008). Modification of a child-support order may be made "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable[.]" Ind. Code § 31-16-8-1(b)(1). To determine if a modification is warranted, the trial court must consider the totality of the circumstances involved. *Himes v. Himes*, 57 N.E.3d 820, 828 (Ind. Ct. App. 2016)*.* Mother, as the party seeking modification, had the burden of establishing that she is entitled to a modification. *Id.*

Neither party requested findings of fact and conclusions pursuant to Trial Rule 52(A). When the court enters findings of fact and conclusions sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has made no findings. *Coffman v. Olson & Co., P.C.*, 906 N.E.2d 201, 206 (Ind. Ct. App. 2009), *reh'g denied*, *trans. denied*. We must determine if the evidence supports

the findings and the findings, in turn, support the conclusions and judgment. *Id*. We will reverse a judgment if it is clearly erroneous—when the judgment is not supported by the findings of fact and the conclusions entered on the findings. *Id.* To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us "with the firm conviction that a mistake has been made." *Id.* We will consider only the evidence most favorable to the judgment and all reasonable inferences therefrom, and we will not reweigh evidence or judge witness credibility. *Id.* A general judgment may be affirmed on any theory supported by the evidence presented. *Id.*

[20] On appeal, Father argues that Mother's inability to refinance the mortgages cannot constitute a change in circumstances warranting modification because the divorce decree provided that she would sell the house if she was unable to refinance. However, at trial, Father admitted that the sale of the house was a change in circumstances. He argued that it was a positive change for Mother because the house sold for $75,000 over its appraised value. *See* Tr. Vol. II pp. 183-84, 187. He points out that Mother was able to satisfy the majority of her debts after the house sold. Father contends that by settling most of her debts, Mother is able to take out a $30,000 loan from her retirement account to pay for G.F.'s tuition going forward. However, Father also had a positive change in circumstances since the divorce: he inherited $200,000 and paid off all of his debt obligations except for the rental-property mortgages and the $42,000 retirement-account loan. Despite these outstanding debts, Father stated that he

is financially able to pay for G.F. to attend Culver without assistance from Mother.

[21] While Father identifies a positive change in circumstances for Mother, he fails to recognize the negative changes in her life. After the divorce was finalized, Mother had to take out an $18,000 hardship loan to prevent the bank from foreclosing on her house. Between the time the divorce was finalized and the modification hearing was held, Mother had to take a total of $41,000 in loans from her retirement account—the maximum amount available. She did this because she did not have enough cash to pay her non-Culver bills and to stop the foreclosure proceedings. Even after selling the house and paying off over $107,000 of debt, Mother's monthly expenses continued to exceed her income.[3] Furthermore, G.F. began struggling academically and behaviorally at Culver. She was receiving Ds in multiple classes and was at risk of failing if her grades did not improve. G.F. was also in counseling at Culver to deal with the behavioral and adjustment issues she was having. Father was not concerned about these issues with G.F. and stressed that it was important to him that all three girls have the same educational experiences. Looking at the totality of circumstances, there have been multiple changes so substantial and continuing as to make the prior order unreasonable.

---

[3] Father points out that the budget Mother presented to the court did not include his weekly child-support payments or his monthly payment of $475 for extracurricular expenses. Even with these figures factored into Mother's budget, she would continue to have a deficit of approximately $2000 per month.

[22]     Father argues that, even if there was a change in circumstances so substantial and continuing as to make the prior order unreasonable, the court's order is still flawed because the court should have ordered Mother to pay some portion of G.F.'s tuition to Culver for her last three years, even if it was not 52%, because the court found that Mother was able to pay a pro rata portion of Roncalli's tuition. Appellant's App. Vol. II p. 16. Father relies on our Supreme Court's holding in *Carr v. Carr*, 600 N.E.2d 943 (Ind. 1992), to support his position. In *Carr*, the Court stated, "While the statutes and our guidelines do not require apportionment based on precise parity, they do require rough proportionality." 600 N.E.2d at 946. We agree with Father. Although the trial court determined that Mother could not afford to pay the tuition she agreed to pay to Culver, the trial court found that Mother had the ability to pay 52% of Roncalli's tuition. Should Father decide that it is important to him for G.F. to attend Culver, Mother is responsible for that portion of Culver that reflects 52% of Roncalli's tuition.

[23]     Furthermore, we find that the trial court erred when it modified the provision that M.F. shall attend Culver for high school. Mother's petition was to modify her contribution to pre-college expenses for M.F. However, the testimony regarding M.F. and her attendance at Culver focused more on legal-custody concerns—her performance in school and ability to adjust to new people and places—than ability to pay. But M.F. is still several years away from being able to apply for admission to Culver. There are too many variables that can change between now and the time M.F. enrolls in high school—the parents' financial

situations, M.F.'s academic performance, and M.F.'s anxiety over new people and places. Accordingly, we find that it was premature for the court to modify the provision that M.F. shall attend Culver. This does not foreclose the possibility of that provision being modified in the future, but any modification should be made at the time that high-school enrollment is imminent. We therefore reverse this portion of the modified order and remand for the trial court to enter a modified order consistent with this opinion.

# II. Contempt

[24] Father also argues that the trial court should have found Mother in contempt for failing to pay the remaining expenses of G.F.'s freshman year at Culver and ordered her to pay his attorney's fees related to the contempt allegation. A party may be found in contempt of court if she willfully disobeys any lawfully entered court order of which she had notice. *Bessolo v. Rosario*, 966 N.E.2d 725, 730 (Ind. Ct. App. 2012), *trans. denied*. A contempt determination is a matter within the sound discretion of the trial court, and we will reverse only when there has been an abuse of that discretion. *Id*. An abuse of discretion occurs when the decision is against the logic and effect of the facts and circumstances before the court. *Id.*

[25] Father contends that Mother willfully disobeyed the trial court's order that she pay the remaining expenses for G.F.'s freshman year at Culver—$22,593.23— because Mother spent thousands of dollars on other expenses for P.F. and M.F. that were not court ordered. Mother does not dispute that she had not paid

Culver at the time of the hearing or that she spent money on P.F. and M.F. Instead, she argues that she was not in contempt because she was unable to pay Culver until her house sold. Mother stated that she voluntarily paid Trinity because P.F. did not have any money saved to pay for college and that P.F. would not be able to continue at Trinity in the spring without her tuition being paid in full. Implicit in that statement was that G.F. could continue with spring classes at Culver without her tuition being paid in full. And this was further illustrated by the fact that G.F. was enrolled in spring classes at Culver during the hearing, even with the balance outstanding.

[26] Mother tried to refinance the house in order to have the money to pay for G.F.'s tuition, but she was unsuccessful and had to sell the house. Mother received over $112,000 in proceeds from the sale and immediately paid Culver what she owed. *See* Appellant's Br. p. 11 (Father acknowledging that Mother sold the house and paid off her debts except for her car note and student loans); Appellee's Br. p. 27 (Mother stating that she paid Culver upon receiving the proceeds from the sale of the house). Under these circumstances, we cannot say that the trial court abused its discretion when it found that Mother did not willfully disobey the order. *See Pettit v. Pettit*, 626 N.E.2d 444, 448 (Ind. 1993) ("Contempt is not appropriate unless the parent has the ability to pay the support and [her] failure to do so was willful.").

[27] Mother and Father, like all parents, want to give their children the best possible life. Mother and Father, however, have gone to the extreme to ensure their daughters receive high-end, private educations by taking tens of thousands of

dollars of loans from their retirement accounts to pay tuition bills. The trial court recognized not only the goals of the parents for their children but also the financial strain those goals were placing on each parent. Given that Mother paid Culver immediately after receiving the funds, the trial court did not abuse its discretion when it found that Mother was not in contempt of the decree and denied Father's request for attorney's fees.

[28] Affirmed in part, reversed in part, and remanded.

May, J., and Altice, J., concur.