## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 06 2019, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

J. Kevin King
Cline King & King, PC
Columbus, Indiana

ATTORNEY FOR APPELLEE

Julie A. Camden
Camden & Meridew, PC
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony C. Jennings,

*Appellant-Respondent,*

v.

Tanya D. Gomez,

*Appellee-Petitioner.*

June 6, 2019

Court of Appeals Cause No.
18A-DC-2289

Appeal from the Hamilton Superior Court

The Honorable Jonathan M. Brown, Judge

The Honorable William Greenaway, Magistrate

Trial Court Cause No.
29D02-0501-DR-77

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Anthony Jennings (Father), appeals the trial court's Order in favor of the Appellee-Respondent, Tanya Gomez (Mother), on child support, post-secondary education expenses, attorney's fees, and a finding of contempt against him.

We affirm in part, reverse in part, and remand with instructions.

## ISSUES

Father presents four issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by failing to consider a full or partial abatement for Father's child support obligation when he was ordered to pay college expenses;

(2) Whether the trial court erred by ordering Father to pay one-third of post-secondary education;

(3) Whether the trial court erred by finding Father in contempt; and

(4) Whether the trial court erred by ordering Father to pay Mother's attorney's fees and contempt fees.

## FACTS AND PROCEDURAL HISTORY

Father and Mother married on August 10, 1997, and had two children together, A.J., born April 14, 1998, and E.J., born July 27, 2000, (collectively Children). On May 19, 2005, the parties entered into an Agreement of Settlement

(Agreement) dissolving their marriage. The trial court adopted the agreement in its ensuing Decree of Dissolution.

[5] Pursuant to the Agreement, Mother had legal and primary physical custody of the Children, and Father was afforded parenting time pursuant to the Indiana Child Support Guidelines (Guidelines). The child support obligation worksheet attached to the Agreement provided that Father's and Mother's weekly gross income was $630 and $794.75, respectively; Father was required to pay $226.45 per week, less a $54.67 credit for parenting time for 98 overnights, for a total of $171.78 per week. Mother was required to pay the first 6%, or $942, of uninsured medical costs incurred for the Children's benefit every year. Any amounts in excess were to be shared between Father and Mother at respectively 44%/56%, and Father was required to settle his portion of uninsured medical costs within seven days after Mother provided him with a bill and proof of insurance payment. In addition, the Agreement provided that the uninsured medical expenses would not carry over to the following year.

[6] On April 29, 2016, Mother filed a petition to modify child support, arguing that "the current child support order is in an amount of child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines." (Appellant's App. Vol. II, p. 27). While the Agreement was silent as to the parties' contribution to the Children's post-secondary education expenses, Mother sought to establish an order for post-secondary education support for the Children's benefit.

[7]     On May 10, 2016, Mother sent an email to Father informing him that A.J.'s and E.J.'s braces had "been paid off." (Appellant's App. Vol. II, p. 55). Mother noted that she had paid $2,550 in 2014, $2,459.68 in 2015, and $2,305 in 2016. Mother calculated that after taking out the initial 6% she was answerable for, Father owed her 44%, or $1,975.02. Father did not reimburse Mother that amount within seven days as directed by the Agreement.

[8]     On July 26, 2016, Father's counsel wrote to Mother's counsel, acknowledging Mother's demand for the uninsured orthodontia costs. While Father's counsel agreed with the quoted orthodontia expenses for 2014 and 2015, Father disputed the 2016 expenses, claiming that the correct amount due was $1,491.02 instead of $1,975.02. Father's counsel then wrote

> [g]iven the fact [Mother] was able to make payments over the course of 2013, 2014, 2015, and 2016, [Father] desires to receive a similar payment plan for a shorter period of time. Again, had [Mother] informed [Father] of the expenses on a yearly basis, he could have made payment arrangements with the provider similar to those of [Mother]. Accordingly, [Father] proposes an initial payment of $51.02 (payable in August) followed by 24 monthly payments of $60. Please advise if this is acceptable to [Mother].

(Appellant's App. Vol. II, p. 62). Although Mother did not respond to Father's request, in August 2016, Father sent $51.02 to Mother, and thereafter he sent regular monthly money orders of $60. Father made a total 19 monthly payments to Mother from August 2016 through February 2018 amounting to $1,131.02. Mother cashed all payments.

[9] On May 31, 2017, Mother filed a verified motion for contempt against Father, arguing that Father had violated the Agreement by not paying his share of uninsured orthodontia expenses. On July 18, 2017, Father filed a responsive brief arguing that Mother's demand for reimbursement of the orthodontia expenses from 2014 through 2016 was untimely considering that the Agreement had provided that uninsured expenses should not carry over to the following year.

[10] This matter was originally set for hearing on August 5, 2016; however, the parties appeared in person and by counsel and informed the trial court that the matter would take longer than the allocated fifteen minutes. Subsequently, the matter was heard on four separate dates: March 16, 2017, August 10, 2017, November 2, 2017, and March 8, 2018.

[11] On June 27, 2018, the trial court issued an Order, modifying the child support order and reducing Father's obligation to $135. Also, concluding that Father had the ability to contribute toward the Children's college expenses, the trial court ordered Father to retroactively pay one-third of A.J.'s college expenses. Also, the trial court ordered Father to pay one-third of E.J.'s college expenses beginning Fall of 2018. The trial court then found Father in contempt for not paying his share of uninsured orthodontia expenses. Finally, the trial court ordered Father to pay $7,000 of Mother's attorney's fees and an additional $3,000 due to the contempt finding. Father later filed a motion to correct error, which was denied.

[12] Father now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Abatement of Child Support*

[13] Indiana Code section 31-16-6-2(b), the educational support statute, provides:

> If the court orders support for a child's educational expenses at a postsecondary educational institution under subsection (a), the court shall reduce other child support for that child that: (1) is duplicated by the educational support order; and (2) would otherwise be paid to the custodial parent.

We have held that requiring a trial court to consider full or partial abatement of a parent's basic child support obligation when the parent is also obligated to pay college expenses, "avoids the duplication of payment for a single expense, resulting in a windfall to the custodial parent." *Borth v. Borth*, 806 N.E.2d 866, 871 (Ind. Ct. App. 2004). Failing to consider a full or partial abatement constitutes an abuse of discretion. *In re Marriage of Tearman*, 617 N.E.2d 974, 977 (Ind. Ct. App. 1993).

[14] The parties' Agreement was silent as to the parties' contribution to the Children's post-secondary educational expenses. In 2016, Mother filed a petition to require Father to pay a portion of A.J.'s college expenses. Evidence was presented that in the Fall of 2016, A.J. enrolled in a nursing program at Purdue University and lived on campus during the school year. Mother submitted evidence that A.J.'s annual educational expenses, which includes tuition, books, room and board, amounted to $23,000. Mother and A.J.

testified that they each contributed about one-third toward those expenses. Father had never paid any of A.J.'s post-secondary expenses.

[15] The 2018 Order directed Father to retroactively pay one-third of A.J.'s college expenses for her freshman and sophomore years. Father was to either obtain a loan and reimburse one-third to Mother, or in the alternative, Father would be liable for two-thirds of A.J.'s junior and senior college expenses. On appeal, it appears that Father has elected the first option, and he contends that when the trial court ordered him "to pay both support and retroactive post-secondary educational expenses relative to [A.J.], the [trial] court should have considered full or partial abatement" since he was also paying child support. (Appellant's Br. p. 18).

[16] We agree with Father that the trial court's 2018 Order did not address the issue of full or partial abatement of Father's child support obligation during A.J.'s on-campus residence during her first two years of college. This was error. *See In re Marriage of Tearman*, 617 N.E.2d at 977. Thus, we remand this case to the trial court and instruct the court to recompute Father's child support obligation for the time when A.J. was actually away attending college on campus, and to include either a full or partial abatement of child support during such times.

## II. *E.J.'s College Expenses*

[17] Father argues that the trial court erred in ordering him to pay one-third of E.J.'s college expenses for a four-year undergraduate engineering program at Purdue University.

[18]     Indiana Code section 31-16-6-2 establishes the trial court's authority to enter an educational support order for the payment of a child's college expenses. In so doing, the trial court must consider the child's aptitude and ability, the child's ability to contribute to the educational expenses, and the ability of each parent to meet these expenses. *Id.* Even where the parents' statutory duty to support their child has ceased, an educational support order may extend past or be imposed after the child reaches the age of nineteen. I.C. § 31-16-6-6(a).

[19]     Indiana Child Support Guideline 8(b) provides in relevant part that the trial court "should consider post-secondary education to be a group effort and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense." Further, absent an evidentiary justification in the record and a finding by the trial court that a proportional obligation would be unfair, the apportionment of educational expenses between the parents should be roughly proportional to their share of income. *See In re Paternity of Pickett*, 44 N.E.3d 756, 765 (Ind. Ct. App. 2015).

[20]     When reviewing an order for the apportionment of college expenses, we do not reweigh the evidence or determine the credibility of witnesses. *Winslow v. Fifer*, 969 N.E.2d 1087, 1092 (Ind. Ct. App. 2012), *trans. denied*. We consider only the evidence most favorable to the judgment and will affirm unless the trial court's order is clearly erroneous. *Id.* A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

[21]     The 2018 Order directed Father to "timely pay [one-third] of [E.J.'s] college education beginning this fall for up to four years." (Appellant's App. Vol. II, p. 12). The bulk of Father's argument on appeal is that there "was no evidence submitted regarding the costs of [E.J.] attending college, what percentage of costs should be borne by [E.J.], and what type of financial aid he could be expected to receive." (Appellant's Br. p. 14). In response, Mother argues, in part, that

> [t]he record contained extensive evidence as to the costs of attending Purdue University. There is nothing in the record to suggest that the cost for E.J. to attend Purdue would be materially different than A.J.'s costs. A.J. and E.J. have the same parents and the same parental resources. They are attending the same college at substantially similar times, and that college was in the midst of a years-long tuition freeze. It was reasonable for the trial court to conclude, based on the evidence in the record, that E.J.'s costs and expenses will be substantially the same as his sister's.

(Appellee's Br. p. 10).

[22]     Turning to the record, while Mother sought an order to set up post-secondary education costs for the Children's benefit, it appears that the focus at the evidentiary hearing was A.J.'s college expenses, A.J.'s ability to contribute toward her own college costs, as well as Father's ability to contribute toward those expenses. For instance, Mother presented several exhibits showing that the annual educational cost for an undergraduate degree at Purdue University is $23,032 per year. Additional evidence was presented that A.J. contributes to about one-third of her college expenses through employment and student loans.

Father then testified that he had never paid for A.J.'s college costs, but he was comfortable contributing about $3,300 toward A.J.'s yearly college costs.

[23] Mother testified that while E.J. was not enrolled in college, he would be starting Purdue University in the Fall of 2018 for engineering. Arguing that there was sufficient evidence relating to the cost of E.J.'s tuition costs and other related educational expenses, Mother relies on Exhibit 15, which showed that the average cost for any undergraduate degree at Purdue is $23,032. The exhibit also showed that some programs, including engineering, had an additional fee of $2,050. Based on that exhibit, E.J.'s annual college cost is $25,082. Mother also relies on her testimony that she was willing to contribute one-third of E.J.'s college expenses. There was no testimony as to how much Father was prepared to pay toward E.J.'s college costs.

[24] In *Knisely v. Forte*, 875 N.E.2d 335 (Ind. Ct. App. 2007), we found that the trial court had erred by apportioning the payment of college expenses solely between the parents absent any findings or conclusions on the child's obligation or ability to obtain student loans. Although there are findings in the record regarding the estimated cost of attending an engineering program at Purdue University, and that Mother was willing to contribute one third of E.J.'s educational costs, similar to *Knisely*, the record and the 2018 Order fail to indicate what percentage of the cost should be borne by E.J. through scholarships, grants, student loans, summer and school year employment, and other cost-reducing programs available to E.J. That fact alone makes the trial court's current Order inadequate. *See Carr v. Carr*, 600 N.E.2d 943, 946 (Ind.

1992) (reversing trial court's post-secondary education expense order where it did not place any responsibility on the student to actually seek grants, loans, or employment). *See also Quinn v. Threlkel*, 858 N.E.2d 665, 671-72 (Ind. Ct. App. 2006) (where we held that a trial court's order for payment of college expenses was inadequate where it placed no requirement on the child to apply for financial aid of any kind).

[25] With these observations, we reverse that part of the 2018 Order requiring Father to pay one-third of E.J.'s college costs and according to *Knisely*, remand is necessary for clarification and further consideration of E.J.'s post-secondary education expenses.

### III. *Contempt*

[26] Father argues that the trial court erred by finding him in contempt for failing to pay his share of uninsured orthodontia expenses within seven days. In the instant case, Father and Mother voluntarily entered into a settlement agreement, which the trial court approved and incorporated into the dissolution decree that included the following language:

> [Mother] shall be responsible for the first $942 of uninsured medical, [expenses] incurred each year. These expenses shall not carry over to the next year. In the event such uninsured medical expenses exceed $942 per year, the parties shall pay the remaining uninsured on a 44%/56% ([Father/Mother]) basis. Father shall pay his share of uninsured medical expenses within [seven] days after a copy of the bill and proof of insurance payment is provided to him.

(Appellant's App. Vol. II, p. 33). In its Order finding Father in contempt, the trial court found that Father had willfully disobeyed the Agreement when he failed to pay his share of uninsured orthodontia expenses within 7 days when Mother presented him with the bill in May 2016. On appeal, Father contends that the above provision was ambiguous and, therefore, he could not be held in contempt for not abiding by it.

[27] Whether a person is in contempt of a court order is a matter left to the trial court's discretion. *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999), *trans. denied*. When reviewing a contempt order, we will neither reweigh the evidence nor judge the credibility of witnesses, and unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed. *Piercey v. Piercey*, 727 N.E.2d 26, 31-32 (Ind. Ct. App. 2000). "In order to be punished for contempt of a court's order, there must be an order commanding the accused to do or refrain from doing something." *Id*. at 32 (citing *Adler v. Adler*, 713 N.E.2d 348, 354 (Ind. Ct. App. 1999)). To hold a party in contempt for a violation of a court order, the trial court must find that the party acted with "willful disobedience." *Id*.

[28] All orders contained within a dissolution of marriage decree may be enforced by contempt. Ind. Code § 31-15-7-10. When dissolving a marriage, parties are free to negotiate their own settlement agreements and may incorporate those into a dissolution decree. I.C. § 31-15-2-17. Such agreements are contractual in nature, and once incorporated into a trial court's final order, the agreements

become binding on both parties. *Whittaker v. Whittaker*, 44 N.E.3d 716, 719 (Ind. Ct. App. 2015). Thus, the terms of a settlement agreement will be given their plain and ordinary meaning unless they are ambiguous. *Id*. Where the terms are clear and unambiguous, we do not construe the agreement or look to extrinsic evidence. *Id*. Terms are ambiguous "only when reasonably intelligent persons would honestly differ as to the meaning of those terms." *Schmidt v. Schmidt*, 812 N.E.2d 1074, 1080 (Ind. Ct. App. 2004) (citation omitted). When interpreting a settlement agreement, our goal is to determine the intent of the parties when they entered into it. *In re the Paternity of G.G.B.W.,* 80 N.E.3d 264, 270 (Ind. Ct. App. 2017), *trans. denied*. As with any other contract, interpreting a settlement agreement presents a question of law that we will review *de novo*. *Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008).

[29] As stated, the Agreement provided that Mother was responsible for the first $942 of uninsured medical expenses incurred each year. The Agreement also provided that the expenses shall not carry over to the succeeding year, and in the event the uninsured medical expenses exceed $942 per year, Father and Mother were to split the balance on a 44%/56% basis. Father was to pay his 44% share of uninsured medical expenses within seven days after Mother presented him a bill. The provision was silent as to whether Mother should present to Father a paid or unpaid medical bill.

[30] The record shows that on May 10, 2016, Mother sent an email to Father informing him that A.J.'s and E.J.'s braces had "been paid off." (Appellant's App. Vol. II, p. 55). Mother noted that she had paid $2,550 in 2014, $2,459.68

in 2015, and $2,305 in 2016. Mother added that after subtracting the first 6%, or $942, she was answerable for, Father owed her 44%, or $1,975.02. Father did not pay Mother within seven days. Instead, Father enlisted the help of his lawyer, and he corresponded with Mother and her attorney about a payment plan. Father proposed a first payment of $51.02 in August 2016, and later payments of $60 from September 2016. Although Mother did not acquiesce to Father's proposal, Mother did not reject the payments either and Mother cashed them. In May 2017, Mother filed a contempt petition against Father for failing to pay the orthodontia expenses. Although Mother acknowledged that Father had been making regular $60 payments for several months, Mother argued that she had never agreed to the Father's proposal and Father's payments were contrary to the Agreement. We note that before the entry of the 2018 Order, Father had made nineteen payments toward his orthodontia arrearage totaling $1,131.02.

[31] At the contempt hearing, Mother testified that she did not believe that she was required to give Father an accrued medical bill every calendar year, rather, she understood the proviso meant that she had to "pay the balance . . . in full," and then request reimbursement from Father within seven days. (Tr. Vol. II, p. 107). Contrary to Mother's assertion, Father opined that Mother was required to present uninsured medical bills sustained every year. Thus, relying on the requirement that uninsured medical expenses incurred for the benefit of the Children shall not carry over to the following year, Father posited that he could not be held in contempt for not refunding the orthodontia expenses incurred

from 2014 through 2016 within seven days since Mother's demand in May 2016 was belated.

[32] Notwithstanding the diverse views that the parties hold regarding whether Mother should have presented a paid medical bill before seeking reimbursement from Father or whether Mother was required to present accrued bills every year to Father, we emphasize that our focus on an appeal to a contempt order is whether a party willfully disobeyed an order of the court. With that said, we find that the stipulation directing Father to pay uninsured medical bills in seven days was straightforward. Mother's failure to provide Father with a paid or an accrued bill every year, did not create an ambiguity; instead, it invited Father to file a cross-motion for contempt or seek clarification of the Agreement. Ignoring the provision of the settlement agreement was not an acceptable substitute. *See City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005) (holding that a party acts at their peril in applying their subjective interpretation to the order of the court); *see also*, *Carson v. Ross*, 509 N.E.2d 239, 243 (Ind. Ct. App. 1987), *trans. denied.*

[33] We add that "[c]rucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully. The determination of whether to find a party in contempt permits the trial court to consider matters which may not, or in fact cannot, be reflected in the written record. The trial court possesses unique knowledge of the parties before it and is in the best position to determine how to maintain its 'authority, justice, and dignity' and whether a party's disobedience of the order

was done willfully." *Witt v. Jay Petroleum*, 964 N.E.2d 198, 202-03 (Ind. 2012) (quotations omitted).

[34] The intent of the parties at the time the 2005 Agreement was entered into was to have Father pay a portion of the Children's uninsured medical expenses within seven days when Mother presented him with a bill. Father was aware of his court-ordered obligation, instead, Father unilaterally decided to make monthly payments of $60 to Mother, which Mother cashed. Father argues that he could not have afforded to settle the whole medical bill within seven days. Although it is facially appealing that Father made regular payments to Mother, it was not consistent with the Agreement. In fact, Father admitted at trial that he could have applied for a loan to pay for his share of orthodontia expenses but did not try to do so. In the Order finding Father in contempt, the trial court determined that Father had the ability to pay for his share of uninsured medical bills but noted that Father had willfully decided to spend his money on his dogs by putting them in daycare and going to TopGolf.

[35] Here, we conclude that the provision as to the parties' obligation to pay a share of uninsured medical expenses unambiguously required Father to settle the bills within seven days. Thus, we conclude that his failure to do so warranted the trial court's contempt determination.

## IV. *Attorney's Fees*

[36] Father argues that he was not in contempt of court for not reimbursing Mother his percentage of uninsured medical expenses, therefore, he concludes the

$3,000 attorney's fee award was unjustified. Once a party is found in contempt, the trial court has "the inherent authority to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions." *Adler v. Adler*, 713 N.E.2d 348, 355 (Ind. Ct. App. 1999) (citing *Crowl v. Berryhill*, 678 N.E.2d 828, 832 (Ind. Ct. App. 1997)). Because we affirmed the trial court's contempt finding against Father, we conclude that the trial court did not err in awarding attorney fees in favor of Mother.

[37] Next, Father argues that the trial court erred by ordering him to pay an additional $7,000 toward Mother's attorney's fees, and he additionally contends that Mother "failed to put forth any evidence" to support that award. (Appellant's Br. p. 29). In the Order directing Father to pay Mother's attorney's fees, the trial court determined as follows:

> 59. Under Indiana Code [section] 31-15-10-1, a court may order a party to pay the other party's fees for maintaining or defending a proceeding, and may order those fees directly payable to the attorney.

> 60. Father sent out four (4) sets of requests for production, and more than ten (10) non-party requests for production, and interrogatories.

> 61. Mother was required to respond or seek a protective order, both of which increased fees.

> 62. This was not necessary for a rather simple matter.

63.  There have also been numerous/hours of litigation over this simple matter, primarily spent with Father asking the same questions numerous times.

64.  Mother has incurred legal fees as a result of Father's litigation tactics.

65.  As a coercive measure to ensure that Father is encouraged to follow the Orders of this [c]ourt, the [c]ourt orders Father to pay $7,000.00 of Mother's attorney[] fees in addition to the $3,000 of attorney's fees for Father's contemptuous behavior.

(Appellant's App. Vol. II, pp. 23-24).  The trial court heard testimony of Father's litigation tactics which were aggressive and costly to defend against. Thus, the trial court's award of attorney's fees is not clearly against the facts and circumstances that were before it and is therefore not an abuse of discretion.

[38]  Father then argues that the trial court erred by awarding the $7,000 attorney's fees to Mother.  The trial court has broad discretion in assessing attorney's fees in dissolution cases.  *In re Marriage of Lewis*, 638 N.E.2d 859, 861 (Ind. Ct. App. 1994).  When making an award of attorney's fees in a marriage dissolution case, the trial court must consider the resources of the parties, their economic condition, the ability of the parties to engage in gainful employment and to earn adequate income, and such other factors that bear on the reasonableness of the award.  *Id*.  Misconduct that directly results in additional litigation expenses may properly be taken into account in the trial court's decision to award attorney's fees in the context of a dissolution proceeding.  *Id*.

[39] In the instant case, the record reveals that Father's and Mother's income was relatively similar. However, the parties' financial condition is only one factor to be considered by the trial court when considering an award of attorney's fees. As noted above, the court may also consider a party's misconduct which results in additional litigation expenses for the other. Here, the record is replete with evidence that Father created significantly more discovery and litigation than was necessary to resolve a simple matter. Mother was required to respond or seek protective orders for each of these excessive discovery requests. As a result of Father's tactics, Mother incurred unnecessary attorney's fees. Given the fact that the trial court was in the best position to judge Father's demeanor, the veracity of his claims and his financial resources, we cannot conclude that the trial court abused its discretion in awarding Mother's attorney's fees.

[40] To the extent that Father argues that the record had insufficient evidence for the trial court to award Mother her attorney's fees, we find this argument unavailing. Mother's attorney testified she has been practicing approximately eleven years; her fee for Mother's case was $250.00 per hour and that fee was usual and customary; and that her total fee in Mother's case was approximately $10,000. Father's counsel had the opportunity to cross-examine her as to those fees and did so at great length. Considering the nature and time involved with the litigation in this case, evidence that Mother's attorney's fees were usual and customary, and Mother's attorney's description of the work performed, the trial court had enough evidence in the record to base its award of attorney fees.

[41]     In light of the foregoing, we hold that the trial court did not abuse its discretion when it ordered Father to pay Mother's attorney's fees.

# CONCLUSION

[42]     In light of the foregoing, we conclude the trial court did not abuse its discretion in finding Father in contempt for failing to timely pay his share of orthodontia expenses.  Also, we hold that the trial court did not abuse its discretion by ordering Father to pay $7,000 of Mother's attorney's fees and an additional $3,000 due to the contempt finding.  However, we reverse the part of the 2018 Order requiring Father to pay one-third of E.J.'s college costs and remand for further proceedings.  Also, we are further remanding this cause to the trial court to recompute Father's child support obligation for the time when A.J. was away attending college on campus, and to include either a full or partial abatement of child support during such times.

[43]     Affirmed in part, reversed in part, and remanded with instructions.

[44]     Bailey, J. concurs in part and dissents in part with separate opinion

[45]     Pyle, J. concurs in part and dissents in part with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony C. Jennings,

*Appellant-Respondent,*

v.

Tanya D. Gomez,

*Appellee-Petitioner.*

Court of Appeals Case No.
18A-DC-2289

---

**Bailey, Judge, concurring in part and dissenting in part.**

[46] I respectfully dissent from the affirmance, in part, of the trial court's order. I agree with the majority that we should remand for further proceedings regarding college costs and child support abatement. However, I respectfully dissent from affirming the finding of contempt because the record does not disclose Father's willful non-compliance with a court order. Also, the award of the entirety of Mother's attorney's fees – on grounds of contempt and causing needless discovery – is excessive. Father, who earns less than Mother and had lesser access to the children's financial information, presented several meritorious claims. He should have been able to do so without paying all his and Mother's attorney's fees.

[47] Our Indiana Supreme Court has described the limited circumstances in which a party may be found in civil contempt:

In order to be held in contempt for failure to follow the court's order, a party must have willfully disobeyed the court order. *Ind. High School Athletic Ass'n v. Martin*, 765 N.E.2d 1238, 1241 (Ind. 2002). The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. *Id.* A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith.

*City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind. 2005).

[48] Here, when the dissolution court adopted the parties' agreement, Father was ordered to comply with the following provision:

[Mother] shall be responsible for the first $942 of uninsured medical [expenses] incurred each year. These expenses shall not carry over to the next year. In the event such uninsured medical expenses exceed $942 per year, the parties shall pay the remaining uninsured [expenses] on a 44%/56% ([Father/Mother]) basis. Father shall pay his share of uninsured medical expenses within [seven] days after a copy of the bill and proof of insurance payment is provided to him.

(Appellant's App. Vol. II, pg. 33).

[49] I fully agree with the majority opinion, which cites *Whittaker v. Whittaker*, 44 N.E.3d 716, 719 (Ind. Ct. App. 2015), that terms of a settlement agreement will be given their plain and ordinary meaning unless they are ambiguous. I do not find ambiguity here. Plainly, stale claims were excluded, as "expenses shall not carry over to the next year" and Father's obligation to pay current expenses is

triggered only when "a copy of the bill and proof of insurance payment is provided to him." (Appellant's App. Vol. II, pg. 33). By no stretch of the imagination does a personal e-mail summarizing past payments over several years (apparently with no documentation of the stale claims) comply with the medical expenses order, thereby triggering Father's obligation to pay within seven days. Even so, he made nineteen payments which Mother accepted without complaint before alleging contempt. I discern absolutely no basis upon which the trial court could have found that Father "willfully disobeyed the court order." *See City of Gary*, 822 N.E.2d at 170.

[50] As for attorney's fees, I also fully agree with the majority that a trial court has wide discretion and may consider such things as respective earnings and contumacious behavior. And I do not wholly disagree with the premise that "Father created significantly more discovery and litigation than was necessary to solve a simple matter." Slip op. at 19. That said, an award of total attorney's fees is excessive here, when Father has lesser earnings than Mother and there were legitimate controversies to be resolved. Indeed, I can conclude from the fact that the case is being remanded for further proceedings that Father did not engage in wholly frivolous discovery and litigation. Yet the trial court imposed upon him the entire burden of Mother's attorney's fees. Father may have requested unnecessary discovery, but this conduct does not support the totality of attorney's fees awarded.

[51]   In sum, I conclude that the challenged portions of the appealed order should be reversed not in part, but in whole, and I agree that the matter should be remanded for further proceedings.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony C. Jennings,<br>*Appellant-Respondent,*<br><br>v.<br><br>Tanya D. Gomez,<br>*Appellee-Petitioner.* | Court of Appeals Case No.<br>18A-DC-2289 |

**Pyle, Judge, concurring in part and dissenting in part.**

I concur in the affirmance of the trial court's decision regarding contempt. I also concur that the case should be remanded to consider college costs and child support abatement. However, I respectfully dissent regarding the amount of attorney fees awarded; in my view, the award is excessive and the matter should be remanded on that issue as well.